THE FIRST NATIONAL BANK OF BOSTON & others, executors, *vs.* UNION HOSPITAL OF FALL RIVER & others.

Bristol.    May 17, 1932. — November 15, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Trust,* Construction of instrument creating trust. *Corporation,* Stock dividend. *Capital and Income. Devise and Legacy,* General or specific, Ademption. *Evidence,* Competency.

The owner of over fifty-eight thousand shares of stock of a certain corporation, of a par value of $25, in December, 1925, when he was preparing a will which he expected to execute that month, deposited ten thousand of the shares with a bank, stating that he had made a provision in his will in regard to the stock and wished it kept separate and that he had a purpose with regard to it which he would disclose later. The bank gave him a receipt stating that such shares were received from him "to be held subject to his order. (Disposition of same mentioned in his will dated December, 1925)." On January 2, 1926, he made his will, which contained a clause stating that, whereas he had "deposited with the" bank such shares "at a nominal value as of today" of $2,000,000 "and whereas it is my intention to leave this stock in their custody during my natural life, or the proceeds of any sale that shall be made of this stock in the meantime, and I will and direct that at my death, it shall become a permanent trust fund to provide for the following charities and be set aside by said Bank and divided up in the following separate trusts, as follows," naming certain charities. Within a year thereafter the corporation declared a stock dividend of fifty per cent, which the testator received and retained, as he did all cash dividends on such stock. Later the corporation decreased the par value of the stock to $10 per share and gave to its stockholders the right to exchange one share of $25 par stock for two and one half shares of $10 par stock. The bank, with the testator's consent, made such exchange without indorsement by him, and thereafter and until his death held the twenty-five thousand new shares as his agent on the terms of the original deposit, he receiving and retaining cash dividends thereon. At his death in November, 1930, he owned over two hundred twelve thousand shares of the stock. Upon an appeal from a decree by a probate court upon a petition by the executor of the will for instructions, it was *held,* that

(1) The legacy creating the trust was a specific legacy;

(2) Since the will spoke from the day of the testator's death, there was no capital fund until that time;

(3) The testator did not intend to create a fund which, from the moment when he executed his will, could draw to itself accretions;

(4) No question of ademption arose;

(5) The corpus of the trust erected by the will was twenty-five thousand shares of the stock;

(6) The shares received by the testator as a stock dividend were not a part of the corpus of the trust.

At the hearing by the judge of probate of the petition above described, evidence of the conduct of the testator subsequent to the execution of the will was admissible, the question, whether there was ademption, then not having been determined.

PETITION, originally filed in the Probate Court for the county of Bristol on April 21, 1931, by the trustee under the will of Earle P. Charlton, late of Fall River, and afterwards by amendment changed into a petition by the executor of the will for instructions as to its seventh clause.

In the Probate Court, a guardian *ad litem* was appointed to represent certain minors and persons unborn or unascertained who might become interested, and the case was heard upon an agreed statement of facts by *Hitch*, J. Material facts are stated in the opinion.

By order of the judge, a final decree was entered answering in the affirmative a question, whether twenty-five thousand shares of the common stock of F. W. Woolworth Co., which The First National Bank of Boston had in its custody at the time of the death of the decedent in the circumstances described in the opinion, constituted the corpus of the trust created under the seventh clause of said will; and answering in the negative a question, whether thirty-seven thousand five hundred shares of such stock, consisting of the twenty-five thousand shares in the custody of The First National Bank of Boston at the date of the death of the decedent, together with twelve thousand five hundred shares, representing the five thousand shares of old stock received by the decedent as a stock dividend of fifty per cent, as exchanged for ten-dollar par value stock, constituted the corpus of the trust.

Union Hospital of Fall River and District Nursing Association of Fall River, two of the beneficiaries of the trust created in said seventh clause of the will, appealed.

*J. E. Carroll,* stated the case.

*G. Newhall,* for the respondent The First National Bank of Boston, trustee.

*R. P. Borden,* for Union Hospital of Fall River and another.

*F. D. Putnam,* (*W. C. Jaycox* with him,) for Ida S. Charlton and others.

*J. P. Doran,* for guardian *ad litem,* submitted a brief.

*E. C. Jenney,* for Johns Hopkins Hospital and others, & *C. B. Cross,* for Truesdale Hospital, were present but neither argued nor submitted a brief.

WAIT, J. This is a petition filed by the trustee under the seventh clause of the will of Earle P. Charlton for instructions as to what number of shares of the F. W. Woolworth Co. constitutes the corpus of the trust fund. By amendment and substitution it became a petition by the executors of the will, one of whom was The First National Bank of Boston, for instructions with regard to the number of shares of the stock properly to be turned over to said bank as trustee under clause seventh of the will.

The petition stated the following facts: Charlton on December 19, 1925, deposited with The First National Bank of Boston ten thousand shares of the common stock of the Woolworth company, par value $25, to be held for him subject to his order, and stated that he had made a provision in his will in regard to it and wished it kept separate, that he had a purpose with regard to the stock which he would disclose later. In clause seventh of his will, which was dated January 2, 1926, Charlton stated: "Whereas I have deposited with the First National Bank of Boston — Trust Department — Ten thousand (10,000) shares of F. W. Woolworth Co. Common Stock, at a nominal value as of to-day of Two million dollars ($2,000,000.00), and whereas it is my intention to leave this stock in their custody during my natural life, or the proceeds of any sale that shall be made of this stock in the meantime, and I will and direct that at my death, it shall become ·a permanent trust fund to provide for the following charities and be set aside by said Bank and divided up in the following

separate trusts, as follows"; then follow provisions naming the charities and stating the application to them which began "One-quarter of the total, but in no instance to be less than Five hundred thousand dollars ($500,000.00), to be put aside and invested, the income from same to be paid" and so forth. On December 8, 1926, the Woolworth company declared a stock dividend of fifty per cent. This dividend, five thousand shares, Charlton received and retained. He also received and retained all cash dividends on the ten thousand shares deposited. On May 15, 1929, the Woolworth company decreased the par value of its common stock to $10 per share, and gave to its stockholders the right to exchange one share of $25 par stock for two and one half shares of $10 par stock. The bank, with Charlton's assent, exchanged the ten thousand shares originally deposited for twenty-five thousand shares of the $10 par stock, on July 3, 1929; and since that date has held the new shares as agent for Charlton on the terms of the original deposit. Cash dividends on the twenty-five thousand shares were received and retained by Charlton up to the time of his death. At the date of his death on November 20, 1930, the stock was valued at $59⅛ per share. The question is whether the gift to the trustee is of twenty-five thousand or thirty-seven thousand five hundred shares of the common stock of the Woolworth company.

The following facts also appear: The shares delivered stood in the name of Charlton. No assignment and no power to assign was executed by him. He took a receipt as follows: "Received from Earle P. Charlton 10,000 shares F. W. Woolworth Co. com. stock to be held subject to his order. (Disposition of same mentioned in his will dated December, 1925)." At that time he was preparing his will, and expected to execute it in December of 1925. On December 17, 1925, he had in person prepared a draft of his will which he sent to his attorney in New York for correction. The provision in the will and that in the draft are substantially the same. The exchange of the ten thousand for the twenty-five thousand shares was made without indorsement of the ten thousand shares by him.

After his death two hundred twelve thousand, one hundred thirty-five shares of the Woolworth stock were inventoried by his executors as part of his estate. On February 9, 1931, The First National Bank of Boston qualified as trustee under article seventh of the will, and on May 22, 1931, the petitioners as executors transferred twenty-five thousand shares of common stock of the F. W. Woolworth Co. par value $10 to it. At the time of the delivery of the stock the capital stock outstanding of the company was $65,000,000, and Charlton was owner of fifty-eight thousand, five hundred ninety-two shares of the common stock $25 par, all registered in his name. At the time of the declaration of the stock dividend he owned fifty-nine thousand shares. He received twenty-nine thousand five hundred shares in that dividend. Other facts were agreed which need not be stated.

No serious contention is made that the bequest is other than a specific legacy. *Thayer* v. *Paulding*, 200 Mass. 98. Such a legacy is defined in *Tomlinson* v. *Bury*, 145 Mass. 346, 347: "A specific legacy is one which separates and distinguishes the property bequeathed from the other property of the testator, so that it can be identified. It can only be satisfied by the thing bequeathed; if that has no existence, when the bequest would otherwise become operative, the legacy has no effect." The gift is of a specific thing. The instruction sought is, what was the thing given? Was it the twenty-five thousand shares which the ten thousand shares deposited became when the latter were exchanged on the reduction in par value of the capital stock of the Woolworth company? or was it those shares, plus five thousand of the $25 par value shares received by Charlton as a stock dividend on the ten thousand shares, which became twelve thousand five hundred shares on the reduction of par value, making a total of thirty-seven thousand five hundred shares? It is earnestly contended that the gift consisted of the original ten thousand shares represented by the certificates delivered to the bank in 1925, and, as matter of law, any stock dividend thereafter received by virtue of their ownership. Further it is insisted

that this is so as the intention of the testator declared by the will. It is argued that the rule declared in *Minot* v. *Paine,* 99 Mass. 101, that cash dividends are income while stock dividends are capital of a fund is controlling; and since five thousand shares received as a stock dividend by trustees in virtue of ownership of ten thousand shares already held in a trust fund would thereafter form part of the capital of the fund, the same rule must be applied here. The contention is not sound. Here no fund existed until the death of the testator. There was no capital fund until he died. A will speaks from the day of the testator's death. *Crapo* v. *Price,* 190 Mass. 317. *Thayer* v. *Paulding,* 200 Mass. 98. *Lyford* v. *McFetridge,* 228 Mass. 285. Charlton in his lifetime could deal with the ten thousand shares and all increment from them as he pleased. He was not restrained by the terms of his will. As matter of fact, he did so deal with the dividends, both cash and stock. He never placed either in the hands of the bank. No present trust was created. He declared an intention only with reference to one hundred certificates of one hundred shares each and the proceeds of the sale of them if he made any. By his express words he guarded against an implication of existing trust then created, for he wrote "and I will and direct that at my death, it shall become a permanent trust fund . . . ." At his death and not till then did he propose to lose control. Doubtless he expected and intended the ten thousand shares, and their proceeds if he sold them, to form, at his death, a capital fund; but there is nothing to establish an intent to create a fund which, from the moment he executed his will, could draw to itself accretions. Without extended discussion, but after careful consideration of the will and the facts agreed upon, we state our conclusion that he had no such intent. We are not moved by the claim that the words "at a nominal value as of to-day of Two million dollars" indicated an intent to keep the value of what he had deposited at approximately that sum; or to attach to that number of shares the relative value which two million bore to the then total capitalization of the company. We think they were used

with the thought in mind of the later gift of "One-quarter . . . but in no instance to be less than" $500,000, and as description.

In the view which we take of the proper interpretation of the will, no question of ademption arises. The law of ademption applies where a testator who has given a specific legacy disposes of the thing given, before his death, and thus, at his death, leaves nothing, or a part only, on which the will can operate. It is well illustrated by *Clark* v. *Packard,* 9 Gray, 417, where a testator by his will gave one-third interests in certain land to each of three daughters and in the gift to the first provided: "But if my executor shall think best to sell said farm, then I give to her one third part of the proceeds of the sale of said farm," while in the gifts to the others he used the words "or if said farm is sold, then one third part of the proceeds of the sale of said farm." Before his death he sold the farm himself. It was held that the gift to the first failed completely, while gifts to the others stood. The gift of the farm was adeemed; but the gift of the thirds in the proceeds was good in the case of the second and third daughters. In the latter situations something was left in the estate on which the gift could operate, that is, proceeds of the sale made by the testator. In the case of the first daughter the gift of the farm was adeemed; and since the gift of proceeds was confined to proceeds of a sale by an executor rendered impossible by the testator's act, there was nothing to which this gift of proceeds could apply. Here, if the gift originally had related to both the ten thousand and the five thousand shares, the subsequent retention and application of the shares received in the stock dividend might have constituted an ademption. We need not consider whether it did.

It is argued that the conduct of the testator subsequent to the execution of the will was not admissible to prove intention. The petition set out many facts relating thereto. The agreed facts set out others. The latter contained a reservation of right to object to any as incompetent, but there is nothing to show that objection was interposed before the judge of probate. We think it too late to raise

questions of evidence now. Moreover, that conduct was undoubtedly admissible on ademption which was an issue raised. Unless restricted when introduced the evidence was thereafter competent generally. No error appears therein.

The research of counsel discloses only four cases in which the question here presented has been passed upon. In *In re Brann,* 219 N. Y. 263, stock distributed under order of court, in *Hicks* v. *Kerr,* 132 Md. 693, and *Griffith* v. *Adams,* 106 Conn. 19, stock dividends were held not a part of a specific bequest of stock. In *Chase National Bank* v. *Deichmiller,* 107 N. J. Eq. 379, stock from the same stock dividend here in question was held to pass under what was there held to be a specific legacy of eight hundred shares of Woolworth stock. No one of these is exactly in point. A somewhat similar matter was decided in *Ogden* v. *Pattee,* 149 Mass. 82, 84, which held that a specific legacy of a certain bond carried with it a coupon attached to the bond at the death of the testatrix, stating: "the specific legacy of the bond carried the bond in such form as the testator left it." That principle is applicable here. The gift of the stock was as the testator left it when he died — twenty-five thousand shares of $10 par value stock in the hands of The First National Bank of Boston. Compare *Thayer* v. *Paulding,* 200 Mass. 98, 101; *First National Bank of Boston* v. *Perkins Institute for the Blind,* 275 Mass. 498; *Moffatt* v. *Heon,* 242 Mass. 201; *Bullard* v. *Leach,* 213 Mass. 117; *Johnson* v. *Goss,* 128 Mass. 433.

The instructions given were right. Such order for compensation for the guardian *ad litem* and costs including charges and expenses of counsel is to be made as the judge of probate may decree just and equitable.

*Decree affirmed.*