WILBER P. GARABRANT, complainant-respondent,

*v.*

C. WILBER CALLAWAY et al., defendants-appellants.

[Submitted February term, 1933. Decided June 30th, 1933.]

*Mr. William T. Vanderlipp,* for the complainant-respondent.

*Messrs. Sorg, Duncan & Bailey (Mr. H. Theodore Sorg,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

CASE, J.

This is an appeal from a decree of the court of chancery, advised by Vice-Chancellor Church, directing the defendants to repay to the estate of Ida M. Garabrant, deceased, certain shares of the Public Service Corporation common stock received by them in excess, as was found, of the number of such shares to which they were entitled as legatees of the said decedent. This was in accordance with complainant's contention that the testatrix, in bequeathing shares of corporate stock, must be understood to have given the shares in current issue and not those mentioned in her certificates.

On August 22d, 1924, Public Service Corporation had issued to Miss Garabrant its certificate for twenty shares of its common stock, and on April 24th, 1925, its certificate for twenty-two additional shares. These certificates, aggregating forty-two shares of the common stock, were the only common stock holdings that Miss Garabrant had in that company, and these she still held at the time of her death on February 4th, 1929. By her will, dated August 7th, 1927, Miss Garabrant bequeathed precisely forty-two shares of Public Service Corporation common stock. The stock was given in five bequests, consisting of ten, ten, five, ten and seven shares, respectively. The first of these bequests was contained within the third item of the will, which reads:

"I give and bequeath to my niece, Gertrude L. Calloway, my piano and piano stool, ten (10) shares of common stock of the Public Service Corporation of New Jersey, and also my large solitaire diamond ring and gold bracelet with seven sapphires in it."

Another characteristic bequest of the disputed stock is the fourth:

"I give and bequeath to my nephew, C. Wilber Calloway, ten (10) shares of common stock of the Public Service Corporation of New Jersey."

The residuary bequest is contained in the fourteenth item of the will and disposes of "all the rest, residue and remainder of my property" to several beneficiaries in named portions. The complainant is designated as the recipient of a one-third part and therefore stands to participate in any addition to the *residuum,* wherein the disputed shares, if returned, would fall. The complainant was also one of the three executors and was, to use his words, the active executor.

On or about October 19th, 1926, the Public Service Corporation adopted a resolution to increase its capitalization. That resolution provided in part as follows:

"The present common stock issued and outstanding of the said corporation at the time this amendment takes effect shall be exchangeable and exchanged by the board of directors of the corporation at the rate of three (3) shares of common stock, without par value, for one (1) share of the present common stock."

On or about October 28th, 1926, the corporation mailed a letter to "common stockholders" giving notice of the adoption of the resolution, advising that new certificates would be issued on the surrender of the old. It does not appear that such letter was received by the testatrix or that she had knowledge of the stock split-up. Indeed, other than the generalization that there was a mailing to "common stockholders" there is no proof that a copy of the letter was sent her. It does appear that neither the complainant nor the complainant's surviving sister and co-executrix in the administration of this estate, Anna Lillian Callaway, received the October 28th, 1926, letter from the Public Service Corporation and that neither of them had knowledge of the increase of capitalization or of the three-for-one issue of new common stock until January, 1930, when the information came to complainant from an unofficial source and was communicated by him to Mrs. Callaway; although both the complainant and Mrs. Callaway were and had been owners of the common stock and had continued to hold the original certificates, ignorant of any right or opportunity to exchange them for new certificates showing a tripled stock ownership. The new shares were not a stock dividend, and it does not appear that they represented an addition to capital or surplus. They were, in effect, the old stock cut into three parts, each such part worth intrinsically one-third of an old share, and certification of ownership was not to go to a holder of the old shares until the old share certificates had been returned for cancellation. The shareholders who did not surrender their old certificates received three times the dividend, per share, as did the holders of the new shares.

When Miss Garabrant died, the executor began almost at once to distribute her estate of about $18,000 gross value. Complainant had knowledge of the contents of the will and the *quantum* and detail of the estate. The stock in question was distributed within two months. The complainant saw the two stock certificates for the common stock, and, with the other executors, signed the assignment forms on the back thereof. The certificates, with inheritance tax waivers and

a copy of the will, were delivered to the corporation with instructions to transfer in accordance with the will. The transfer clerk first drew new certificates to a total of forty-two new shares, then, discovering that the certificates submitted were for the old shares, increased the share totals by eighty-four, thus placing in each legatee a holding prorated three for one on the basis of the old shares. The insistment of the complainant is that the total direct bequests are for forty-two new shares and that the legatees should be compelled to return to the estate the shares—eighty-four—received by them in excess of that number. Complainant says that he did not know of the number of shares actually issued to the legatees until about January 1st, 1930; but he also says that he did not know of the company's action in splitting up its shares until that time; which means, of course, that when he had, early in the preceding year, endorsed the certificates for distribution, he had understood that the forty-two shares of stock given away by the will were the forty-two shares shown on the certificates and that the latter shares were co-extensive with the former.

All of the above recited facts appear either from the complainant's direct testimony or from an agreed stipulation that was marked as complainant's exhibit. The stipulation contained a parenthetical statement that the relevancy or materiality of the stipulated facts was not admitted; but no objection was made at the trial to the relevancy or materiality of any stipulated fact. The record comes up without objection therein by the complainant to any of its contents.

We may first say that we find no evidence of fraud against, misrepresentations to or withholding from, the complainant, notwithstanding the allegations in the bill to that effect. Everyone, including, quite clearly, the complainant, assumed that the decedent had given by direct bequests the shares, and all of the shares, that her certificates called for.

The further issue requires a construction of the will. The stipulation recognizes, in our opinion, the existence of two classes of common stock shares, viz., shares of the "old no par stock" and shares of the "new no par stock," the latter

being the shares in current circulation and the former shares being subject to replacement by the latter as and when the appropriate certificates were returned for that purpose. This presents a latent ambiguity in the will. Which did the testatrix intend to give? We deem the problem to be not so much whether the bequests were general or specific, although that question was learnedly argued in the briefs, as whether the testatrix intended to make a gift of the "old" shares or of the "new."

Where there is a latent ambiguity in a will, which arises when there are two or more persons or things, each answering exactly to the person or thing described in the will, evidence *aliunde* is admissible to show which was intended. *Griscom* v. *Evens, 40 N. J. Law 402; affirmed, 42 N. J. Law 579.* Appellants complain that they were entitled to put a question, overruled by the court, asking for an oral expression by the testatrix in this respect; but we find it unnecessary to pass thereon as the admitted and undisputed testimony concerning the situation and surroundings of the testatrix and of her property sufficiently illuminates the intention of the testatrix as expressed in the will. As was said many years ago in *Kent* v. *Armstrong, 6 N. J. Eq. 637:*

"In the construction of wills, the primary and important enquiry is to ascertain the intention of the testator; indeed pretty much all the rules for construing wills and devises are based upon what is the apparent or the presumed intention of the testator; and if that appears to be clear and not in violation of any established principle of law, that intention is to govern without further enquiry or regard to mere technical terms."

This court held, in *Coyle* v. *Donaldson, 91 N. J. Eq. 138,* that "the testator's meaning and intention, to use the language of this court, as written by Mr. Justice Dixon, in the case of *Torrey* v. *Torrey, 70 N. J. Law 672,* must be determined, not by fixing the attention on single words, but by considering the entire will and the surroundings of the testator, when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature."

If, pursuing the thought expressed in the opinion last cited, we put ourselves in the position of the testatrix, at the time of the execution of the will, and consider the circumstances confronting her and the method of her disposition, there is little trouble, we think, in determining precisely what she meant to do. In her modest estate were certificates for forty-two shares of the common stock of a corporation. The corporation had determined to increase its capitalization, as an incident to which it divided its common shares into three parts and noticed its shareholders to return their present certificates and receive new ones showing three times the number of shares, but, in multiplying the number, it had divided the value, so that no change was accomplished in the gross value, or in the assets that lay back of the shares or in the amount of the dividends received by the shareholder. As already noted, there is nothing, other than that "a letter to common stockholders was mailed by the company," to indicate that Miss Garabrant knew of this corporate action. The mere statement that a great corporation has mailed printed notices to its thousands of stockholders is so loose and so general that it can hardly be said to raise a presumption with respect to this individual stockholder as to whom there is no specific proof. This is aptly illustrated in the non-receipt of the communication by either the complainant or Mrs. Callaway, both of them equally entitled with the testatrix thereto; and it would, we think, be unjust to permit such a matter of internal corporate management to thwart a testamentary intention, if that intention be obvious. There is something strangely unusual about the number of shares owned by Miss Garabrant—forty-two. The sum total of shares given away by her is that same unusual number. The immediate conclusion is that she was giving away in terms of what she had. The gifts of that number was not casual or accidental. It was planned. In order to accomplish it she gave the odd and unusual number of seven shares to the last named of the legatees favored with this form of stock. The imbedding of the gift of the ten shares to Gertrude Callaway in the midst of a group of other gifts, all specific and of objects quite

personal to the testatrix, carries a suggestion, however slight, that the stock was not only owned and possessed by her but was of a type with which she was intimately familiar.

A comparison of the contents of the inheritance tax report, which is an exhibit and which, we think, must be taken to be correct against the complainant because he had examined the same and approved thereof, shows a close identity between the contents of this estate and the gifts made by the will. Miss Garabrant had three shares of preferred stock of Public Service Corporation, and she gave away three shares; just as she had and gave away a piano and a tourmaline ring and other personal property. It is to be noted—omitting reference to the Public Service Corporation common stock—that every gift made by the will is of property actually owned and possessed by the testatrix, with the exception of money gifts which obviously were intended to be, and were in fact, paid from bank accounts or the proceeds of other existing securities.

Taking the will as a whole and drawing the intention of the testatrix from the language used therein, viewed in the light which the situation and circumstances connected with the property shed upon it, we conclude that the intention was to give "old" stock to the five named legatees. The certificates issued by the corporation to the respective legatees were in accordance with the directions of the will.

The decree below will be reversed and the record remanded to the court of chancery with instructions to dismiss the bill.

*For affirmance*—Donges, Heher, Wells, JJ. 3.

*For reversal*—The Chief-Justice, Lloyd, Case, Bodine, Van Buskirk, Kays, Hetfield, Dear, JJ. 8.