George W. Morgan, late of Annandale, New Jersey, died testate on March 16th, 1930, leaving him surviving a son Browne Morgan, the complainant, and a daughter Helen Morgan Murton. An exigency has now supervened in the administration of his estate which has induced the complainant as the surviving executor to request a judicial construction of certain portions of the will. The pertinent paragraphs of the will are:
"Paragraph seven: I give and devise to my children, Browne Morgan and Hazel Morgan Murton in trust however for the purposes set out in this paragraph those several certain tracts of land with all buildings, improvements, planted crops and manure thereon, designated as follows: [Here follows a careful description of the three tracts of land devised.] The foregoing property is given and devised in trust to operate the farm land if they deem that best, and to collect the rents, issues and proceeds from all of such property arising until the same is converted into cash by sale or divided as herein provided. Sale or lease of the whole or parts of said property may be made absolutely at the discretion of said trustees privately or by auction within ten years after my decease, and all leases, sales and terms of sales shall be entirely at the discretion of said trustees who are hereby authorized and empowered to lease sell and convey the same in fee simple by deeds, or other instruments in writing sufficient for the purpose.
"The net proceeds arising from each sale shall be paid over as soon thereafter as may be possible an equal one half part thereof, to my daughter if living and if not living then to her issue equal part to each, and the remaining one half part thereof to my son if living and if not living then to his issue an equal part to each. In case of the death of either before the sale of any of the said property, the survivor shall operate, lease, sell and convey the same at his or her discretion and turn over the net proceeds in the same manner as just stated. In case of the sale of any of said property at public auction my son and my daughter may bid on and purchase the same and in that event the share of the proceeds payable to the buyer may be *Page 483 
applied on the purchase price. But anything herein to the contrary notwithstanding, my said daughter may for a satisfactory consideration paid to and retained by her may by sufficient instruments in writing lease, release, grant and convey in fee simple to my son directly or indirectly the whole or any part of the foregoing said tracts of land and lot and my said son may for a satisfactory consideration paid to and retained by him may by sufficient instruments in writing lease, release, grant and convey in fee simple to my daughter, directly or indirectly, the whole or any part of the aforesaid tracts and lot of land. In this way said property or any part of it may be divided between or conveyed to my son and daughter by mutual agreement, and upon recording instruments so conveying the said trusts as to the property so conveyed shall cease and be at an end and the grantee shall be vested with title in fee simple to the property so released and conveyed by one to the other; the conveyances may be made directly or indirectly as shall be by them deemed expedient and advisable. If my son and daughter shall deem it advisable, they may form a corporation and convey the real estate in Hunterdon County, New Jersey, with or without all of the live stock and all farming machines, machinery, utensils and equipment to the corporation subject to any mortgage on the property and divided the corporate stock equally between themselves."
 * * * * * * *
"Paragraph nine: I hereby authorize and empower my said executors acting together if both are alive and competent and my trustees likewise acting together or the lawful survivor of said executors and said trustees to lease, release, mortgage, bargain, sell, grant, convey, assign, transfer and deliver in parcels, lots or otherwise, to each other to a corporation organized by them and to strangers, any and all the estate and property, real, personal, and mixed and all other property, and rights, of which I may die seized or possessed, or which may be in any way to me belonging at the time of my decease, and apply the proceeds as herein directed. My executors and trustees may retain entirely at their discretion and without liability for any error of judgment, any investment which shall comprise any part of my estate at the time of my death."
 * * * * * * *
"Paragraph eleven: The trustees named herein, are hereby authorized and empowered to appoint if they so desire a trust company of New Jersey as a co-trustee of any of the trusts created by and under the terms of this will."
The two tracts of land first described in paragraph seven of the will comprise a relatively large estate situate at Clinton on which was located a residence, stables for fifteen horses, with integrant carriage rooms, harness room, office and an adjacent exercise track. It may be inferred that this property was utilized in the breeding and training of race horses. *Page 484 
The testator appointed his son and daughter executor and executrix of his will and pursuant to the powers and directions of the testator's will, his son and daughter in their representative capacities conveyed these tracts of land to themselves as trustees by deed dated March 20th, 1931. Admittedly, the testator's son and daughter thereafter possessed and managed this property as trustees. The daughter died on July 3d 1938. By her will, probated in Ontario, Canada, the daughter, Hazel Morgan Murton, devised one-third of her estate to her husband Herbert Eastwood Murton absolutely, and two-thirds to her husband in trust for their two children. In 1940, the complainant, as the surviving trustee, assuming that he was properly exercising the power conferred by the will, conveyed the real estate situate in Essex County also described in paragraph seven of the testator's will. The legal propriety of this conveyance has not been challenged. Subsequently, on January 31st, 1942, Herbert Eastwood Murton conveyed his one-third interest in the Clinton property to himself as trustee for his children.
On March 18th, 1941, the complainant, as the surviving executor and trustee contracted to convey certain portions of the Clinton tracts to the State of New Jersey. By reason of the discordancy to be presently related, the state has been disinclined to accept the deed of the complainant.
The complainant supposes that the will of the testator has vested the title in him as trustee and has empowered him to convey the real estate comprehended by paragraph seven of the testament. The defendant Herbert Eastwood Murton (former husband of testator's daughter, Hazel) individually and as trustee for Patricia and Bettina Murton (their children) insists that the will failed to create a trust, that a power to convey does not repose in the complainant as trustee and even if so, such a power expired upon the lapse of ten years after the testator's death. The other defendants, Anna Morgan, Alice Morgan Littel and Joseph Littel (complainant's wife, daughter and son-in-law) concede that the complainant as trustee is clothed with a power of sale, and they submit that by virtue of the terms of the testator's will and the law, the power of sale must now be exercised, and they *Page 485 
pray that a prompt administration of the estate be ordered. (R.S. 3:26-1; 3:26-5.)
It must be immediately acknowledged that paragraph seven of the will very distinctly evinces the intent of the testator. He devises the several tracts of land to his son and daughter expressly in trust with power (a) to "operate the farm land," (b) "lease the whole or parts of said property," (c) sell, at private or public sale "within ten years" after the testator's death. Such alternative courses were to be pursued, and the terms of lease or conveyance were to be determined, "absolutely at the discretion of said trustees." Active service therefore devolves upon the trustees. Similar powers were given to the surviving trustee. Other broad and capacious powers were conferred. Manifestly, the testator endeavored to foresee the eventualities likely to arise and to prescribe testamentary directions relative to them.
It is inferred that the Clinton property was of a character more likely to absorb than to produce income and a property for which there would be a rather restricted market. To avoid an apprehended sacrifice of this asset of his estate, the ideas expressed in the paragraphs of the will evolved. Basically the testator resolved to devise the real estate to the son and daughter as trustees to manage, control and administer it in concert and harmoniously according to their judgment and eventually to amicably partition it or sell it and divide the proceeds. If unable to act co-operatively, his son and daughter were empowered to select a third trustee. Indeed, he authorized a corporate management, if they preferred it. He also contemplated the situation which would be occasioned by the death of one trustee before the trust had terminated. The intent and desire of the testator to make this property the subject-matter of a trust is indubitable. "The art of construing words in such manner as shall destroy the intent, may show the ingenuity of, but is very ill becoming, a judge." Den v. Young, 24 N.J. Law 775, 780.
The trust, so designed, is not a dry trust which would be executed by the statute of uses. Martling v. Martling, 55 N.J. Eq. 771; 31 Atl. Rep. 27; Phillips v. Vermeule, 88 N.J. Eq. 500; 102 Atl. Rep. 695; Christine v. Baldwin, *Page 486 95 N.J. Eq. 83; 122 Atl. Rep. 369; Riley v. Riley, 107 N.J. Eq. 372; 152 Atl. Rep. 665; Restatement of the Law of Trusts §§67, 68, 69; 1 Scott on Trusts §§ 69 et seq.
The cardinal rule of construction of wills is that the intention of the testator must prevail unless such intention is inimical to an established rule of law. Kent v. Armstrong,6 N.J. Eq. 637; Den v. Young, supra; McCracken v. Gulick,92 N.J. Eq. 214; 112 Atl. Rep. 317; Garabrant v. Callaway,113 N.J. Eq. 424; 167 Atl. Rep. 1; Van Duyne v. Van Duyne, 14 N.J. Eq. 397; Provost's Executor v. Provost, 27 N.J. Eq. 296;Anderson's Executor v. Anderson, 31 N.J. Eq. 560; Cray v.Herder, 46 N.J. Eq. 416; 19 Atl. Rep. 385; Child v. Orton,119 N.J. Eq. 438; 183 Atl. Rep. 709; Briggs v. Faulkner, 120 N.J. Eq. 1; 183 Atl. Rep. 712.
The question survives whether the manifest purpose of the testator in attempting to create this trust was anomalous to an established principle of law.
It is the contention of the defendant Murton that since the son and daughter as trustees under the will immediately possessed the power of unrestricted disposition of the realty and were not only the trustees but also the only cestuis que trust, the equitable estate of each merged into the legal estate and thus in the case of each the equitable and legal estates united in the same person.
Preliminarily, it is perceived that the intended trust was to endure until all the property was partitioned or sold and a distribution made of the proceeds or all the property disposed of by the pursuit of both methods. Evidently, it was contemplated by the testator that if the property was retained for some years and ultimately sold and the trust thereby terminated, and if, meanwhile his son or his daughter should die, certain grandchildren of the testator might then become beneficiaries. These circumstances have in fact arisen. A trust in which one of several beneficiaries is the trustee is a permissible disposition of property. 1 Scott on Trusts §§ 99.2, 99.3; Restatement of theLaw of Trusts § 99; 1 Bogert on Trusts and Trustees § 129.
Is there then some inviolate principle of law which by its operation nullifies the testamentary creation of a trust in *Page 487 
which the several trustees and the beneficiaries are identical and in which active duties in respect of the subject-matter are imposed upon the trustees, such as the management of a farm property, the collection of its issues and profits, and the eventual disposition of the property and the distribution of the proceeds? The query is not novel to our jurisprudence. Unfortunately, judges and legal scholars have not united in a concordant response.
A discussion of the point is found in 1 Scott on Trusts pp.519-538 §§ 99-100. That author states:
"A trust may be created in which the trustees are A and B and the beneficiaries are also A and B. In such a case it might be argued that A and B hold the property free of trust. It has, indeed, been held in some cases that in such a situation there is no trust, with the result that either may insist upon partition against the will of the other and contrary to the expressed intention of the settlor. It would seem, however, that there is no good reason for thus defeating the intention of the settlor. A rule which would defeat the intention of the settlor on the ground that there is necessarily a merger of the equitable in the legal interest would be purely arbitrary. There is no substantial objection to the view that there is a separation of the legal and equitable interests even though the beneficiaries are also trustees. In such a case each of the beneficiaries has an equitable interest of the character which the settlor intended to give him, unless to give effect to the settlor's intention is against public policy. There is no reason to give the beneficiaries a different kind of interest from that which they would have had if a third person had been named as trustee. Not only is the trust not automatically extinguished because of the identity of the beneficiaries and trustees, but there is no reason why any beneficiary should have power to terminate the trust without the consent of the others, if this would be contrary to the intention of the settlor. Even if all the beneficiaries consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust.
"It would seem to be the better view, therefore, that an intended trust is effectively created although the trustees and beneficiaries are the same persons, and that a valid trust is not extinguished merely because the trustees and beneficiaries later become identical. The mere fact that A and B originally are or later become the trustees of a trust of which the beneficiaries are A and B is not a sufficient reason for terminating the trust if either does not consent or if such termination would be contrary to the intention of the settlor in creating the trust. * * *" Ibid. pp. 533-534 § 99.5.
The text of 1 Bogert on Trusts and Trustees p. 383 § 129
reads as follows: *Page 488 
"But if there are two or more trustees or two or morecestuis, a diversity arises. The two or more trustees hold their interest (generally legal) as joint tenants. The title is vested in a group as a unit; while the two or more cestuis hold their equitable interests as tenants in common in almost all cases. This slight difference in the character of legal and equitable interests may justify the refusal to apply merger except in the instance of a single person as sole trustee and sole cestui. Thus, even if A and B hold a legal fee as trustees for A and B who have the complete equitable interest, the difference between joint tenancy and tenancy in common may be ample ground for leaving the trust intact."
The same author states that equity will not apply the doctrine of merger to defeat the intent of the donor. 4 Ibid. § 998.
"If there are several beneficiaries of a trust, the beneficiaries may be the trustees." Restatement of the Law ofTrusts § 99 (4).
"On the other hand, there can be a trust where there are several beneficiaries who are also the trustees. In such a case each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. As trustees they hold the legal title as joint tenants, and ordinarily they hold the beneficial interests as tenants in common. No one of them, without the concurrence of the others, can properly transfer an individual legal interest in the property free of the trust. If a creditor of one of the beneficiaries seeks to reach his interest he can do so only by proceedings appropriate for reaching an equitable interest, and cannot levy execution in an action at law upon his legal interest." Ibid. § 99 b. See, also, same work, § 341 h.
Chancellor Kent addressed himself to the problem in the following manner:
"Merger is not favored in equity, and is never allowed, unless for special reasons, and to promote the intention of the party. The intention is considered in merger at law, but it is not the governing principle of the rule, as it is in equity; and the rule sometimes takes place without regard to the intention, as in the instance mentioned by Lord Coke. At law, the doctrine of merger will operate, even though one of the estates be held in trust, and the other beneficially, by the same person; or both the estates be held by the same person, on the same or different trusts. But a court of equity will interpose, and support the interest of the cestui que trust, and not suffer the trust to merge in the legal estate, if the *Page 489 
justice of the case requires it. Unless, however, there exists some beneficial interest that requires to be protected, or some just intention to the contrary, and the equitable or legal estates unite in the same person, the equitable trust will merge in the legal title; for, as a general rule, a person cannot be trustee for himself. Where the legal and the equitable interests descended through different channels, and united in the same person, and were equal and co-extensive, it has been held that the equitable estate merges in the legal in equity as well as at law. The rule at law is inflexible; but in equity it depends upon circumstances, and is governed by the intention, either expressed or implied (if it be a just and fair intention), of the person in whom the estates unite, and the purposes of justice, whether the equitable estate shall merge or be kept in existence."
"It would be inconsistent with the object of these Lectures, to pursue the learning of merger * * * the learning under this head is involved in much intricacy and confusion, and there is difficulty in drawing solid conclusions from cases that are at variance, or totally irreconcilable with each other. 4 Kent'sCommentaries (14th ed.) pp. 102, 103.
Some comment is also found in 3 Page on Wills, pp. 546, 547 §1204.
"If corresponding legal and equitable interests unite in the same person, the equitable interest merges in the legal interest unless it appears from the will that testator intended to keep such interests separate.
"If the legal and equitable interests do not correspond, but are substantially different, a union in the same person does not work a complete merger.
"If the evident intention of testator is to keep the legal and equitable estates separate, they will not merge on uniting in the same person, or when the particular interest and the future interest vest in the same person."
In Harris v. Harris, 205 Pa. 460; 55 Atl. Rep. 30, the testatrix devised her real estate to her executors, in trust to divide the profits among her children, with full power to sell any part thereof till such time as such children shall determine that the whole shall be sold or divided, when the real estate, or the remaining portions thereof, should be equally *Page 490 
divided among the children. The children were named executors and trustees. It was resolved that an active trust was created which could only be terminated by the consent of all the children or survivors. The proceeding was an attempt of one child to terminate the trust. There, as in the present will, all the rest of the testatrix' estate was given to the children in fee. The court could not divine her reason for making the distinction, but pointed out that her intention to make such a distinction was obvious and such intention must control.
In Noyes v. Noyes (Vt.), 9 Atl. Rep. 2d 123, the several trustees were the several beneficiaries. It was held that no merger resulted. The court asserted that the joint tenancy of the trustees and the tenancy in common of the cestuis were not commensurate. Equitable and legal estates must first be commensurate before the doctrine of merger is applicable.
In Hance's Estate, 69 Pa. Super. 432, the two trustees and beneficiaries of a spendthrift trust were identical. The court held that no merger of estates resulted.
In Sturges v. Citizen's National Bank, 137 Md. 654;137 Atl. Rep. 378, it was held that a gift of a bank deposit in trust for two persons who were also the trustees did not render the trust invalid.
In Johnson v. Muller, 149 Kan. 128; 68 Pac. Rep. 2d569, where there was identity of trustees and beneficiaries, the court said:
"We are of the opinion that under the will the interests of the beneficiaries are not common to each other, that each trustee is to look after the interest of all the beneficiaries, that each beneficiary is interested in what all of the trustees may do in the management and control of his estate, and there being a specific provision for succession of trustees, that it may not be said that any beneficiary is trustee for himself alone. In so far as merger of the legal and equitable estates is concerned, we are of the opinion the intention of the testator is too clear to permit it to be defeated or destroyed by application of the doctrine."
That court relied upon Bullock v. Wiltberger, 92 Kan. 900;142 Pac. Rep. 950. That court pointed out that the *Page 491 
testator's intention should control in the construction of wills and proceeded to remark:
"The doctrine of merger, which is largely a matter of theory, ought not to be employed to defeat the intent of the testator and to extinguish as it would in this case, the rights of grandchildren who are strangers, and not parties to the act relied upon as merger."
The disfavor of the doctrine of merger in courts of equity is also pointed out in Tiffany Bullard, The Law of Trusts andTrustees, pp. 813, 814, 815. See, also, 1 Tiffany on RealProperty § 34 (at p. 92).
With the possible exception of the spendthrift trust, there is unanimity of opinion that a person may not be sole trustee andsole beneficiary of equal and co-extensive legal and equitable estates. The basic reason supporting that rule is at once apparent. The only available enforcement of the trust is by subpoena in equity and a man cannot sue himself. But, as Scott and other writers have indicated, the impossibility of enforcement by suit does not exist where there are two or more trustees who are also the beneficiaries. It seems obvious that in the latter case any of the trustees or any of them as beneficiaries may sue the other trustee or trustees in equity for any breach of duty.
Nevertheless, there is a divergent view productive of the conclusion that where a legal joint tenancy and an equitable tenancy in common become united, the latter is merged. In Lewinon Trusts (14th ed.) p. 12, the writer asserts:
"It is a confidence `reposed in some other'; not in some other than the author of the trust, for a person may convert himself into a trustee, but in some other than the cestui que trust;
for as a man cannot issue a subpoena against himself, he cannot be said to hold in trust for himself. If the legal and equitable interests happen to meet in the same person, the equitable is forever absorbed in the legal * * * and where a legal joint tenancy and an equitable tenancy in common become united, the latter is merged."
The last proposition is based upon In re Selous (1901), 1Ch. 921. At p. 922 of that decision the court said:
"That rule in Selby v. Alston (3 Ves. 339; 4 R.R. 10), namely, that where equitable and legal estates, equal and *Page 492 
co-extensive, unite in the same person, the former merges, or in other words, that a person cannot be trustee for himself, applies to a case where such estates unite in two or more persons * * * I hold that two or more persons cannot be trustees for themselves for an estate co-extensive with their legal estate."
The legal treatise and the case are English. It is to be recalled that in England, while the will controls the extent of the estate granted, the disposition of the estate is governed by the desires of the beneficiaries and not the intention of the testator. This is true to the extent that beneficiaries in England by united action may terminate the trust despite the explicit words of the will and despite the fact that material purposes of the trust have not been fulfilled. 3 Scott on Trusts§ 337. This, of course, is against the weight of American authority. See Restatement of the Law of Trusts §§ 337, 341, and the numerous New Jersey adjudications, supra.
In Greene v. Greene, 125 N.Y. 506; 26 N.E. Rep. 739, it was held that no trust can be created where the beneficiaries and trustees are the same persons. The court said such a disposition of property is an impossibility. If the court meant that conceptually it was impossible, I cannot agree. However, the court adverted also to the "involved" and "conflicting" language of the will, and it must be realized that the so-called statute of uses of New York limits quite strictly the purposes for which a trust may be created.
In Dunn v. Ponceler, 230 Ala. 375; 161 So. Rep. 450, the court construed a devise to a wife and daughter in trust to divide the income for the wife's life and the fee to the daughter thereafter. The court held that the daughter's estates merged. The suit was one of legal execution on the daughter's property. The court might have allowed equitable execution instead. InBullis v. Pitman, 90 N.J. Eq. 88; 105 Atl. Rep. 589, a similar devise came under the consideration of Vice-Chancellor Backes. He held that no trust was created because no person can be both trustee and cestui que trust at the same time. His authority, however, is Lewin on Trusts, which is English law — not concerned with the testator's intention — and Perry onTrusts which deals only with the case *Page 493 
of a sole trustee and sole cestui. Undoubtedly, the very nature of that suit intensely influenced the decision reached. The complainant, in order to avoid an attack upon the will, had agreed to a division of the estate. By her bill, she was attempting to escape her contractual obligation and re-establish the provisions of the will.
In the early case of Cooper v. Cooper, 5 N.J. Eq. 9,
Chancellor Halsted held that where the legal and equitable estates are united in the same persons, the equitable estate merged in the legal estate. One feels that the case might have been more readily decided upon the theory that no trust was attempted. The facts were that a man who was trustee for his children of a tract of land died. His will says nothing about the creation of a trust. Chancellor Halsted waived consideration of that issue and stated that whether the testator devised a trust estate or his legal title descended, both met in the children and the equitable estate merged in the legal. No authority is cited. Here again, the case, unlike that now before the court, does not contain the specific and clear intent of the testator to create a trust. I note further that the Cooper Case, decided in 1845, has never been cited in our reports on any proposition of law or equity therein contained. Incidentally, the same is likewise true of Bullis v. Pitman, supra.
 Bolles v. State Trust Co., 27 N.J. Eq. 308, was a case such as Dunn v. Ponceler, supra. The holding was not necessary to protect the creditors. Equitable execution could have been granted instead of legal execution with the same effect. The case was distinguished in Goodheart v. Goodheart, 63 N.J. Eq. 746;53 Atl. Rep. 137. It was cited with approval in Hopping v.Gray, 82 N.J. Eq. 502; 89 Atl. Rep. 29, in a case in which — as in Cooper v. Cooper, supra — no apparent reason existed for not applying the doctrine of merger. In Den ex. dem., Wills v.Cooper, 25 N.J. Law 137, the question was what interest had passed under a sheriff's sale. The court applied the doctrine of merger so that the debtor's whole interest was reached.
In Collins v. Mosher, 115 Fed. Rep. 2d 900, the provisions of the will were very similar to those in the will now *Page 494 
before this court. The court held that no trust could be created where the trustees and beneficiaries were the same persons. Noticeably, the cases therein cited to uphold the ruling are not relevant to that subject.
Finally, the cases of Neville v. Gifford, 242 Mass. 124;136 N.E. Rep. 160, and Enochs Flowers, Ltd., v. Roell,170 Miss. 44; 154 So. Rep. 299, have been also examined. These cases related to business trusts in which the trustees and cestuis
were identical. The Massachusetts court found that a partnership rather than a trust had been created. The Mississippi court relied on the Massachusetts decision but declared that no such trust could be created. In this, the Mississippi court meandered somewhat rashly from the true adjudication of the Massachusetts court in Neville v. Gifford, supra.
In the present will, the testator has explicitly made known his intention to create a trust in respect of the designated real estate, and, inferentially, it is evident that he was actuated in so intending by cogent and substantial reasons. Discord between those who were to possess, manage and sell the properties was the misfortune which he sought to avoid. Had the testator's daughter continued to live, this controversy probably would not have originated. This intention and purpose of the testator should of course be effectuated, unless it is to be defeated by the doctrine of merger. Equity controls the application of the doctrine of merger to the given case and equity will prevent a merger in order to effectuate the manifest intent of the testator where the interests and purposes of justice are thereby promoted. Merger is disfavored. The trust is the special child of equity. In the circumstances of this case, the clear and carefully premeditated intent of the testator is the persuasive equitable consideration. No harm visits the defendants in now recognizing the desired trust.
It is therefore determined that the several tracts of land described in paragraph seven of the will were lawfully devised to the testator's son and daughter in trust with directions to them to perform certain specified services in respect thereof; that in the circumstances of this case, the estates of the son *Page 495 
and daughter did not merge and that the complainant, as the surviving trustee, has the requisite testamentary power to convey. The suggestion that the power to convey terminated at the expiration of ten years after the death of the testator is fanciful. The testator sought to enlarge rather than to abridge the opportunity to accomplish an advantageous disposition of the real estate. A decree in accordance with these conclusions will be advised.