67 So.2d 665 (1953)
In re VAIL'S ESTATE.
Supreme Court of Florida. Special Division B.
October 27, 1953.
Rehearing Denied November 20, 1953.
*666 Pleus, Edwards & Rush, Orlando, for appellants.
Maxwell W. Wells, C. Arthur Yergey and Malcolm B. Sterrett, Orlando, for appellees.
HOBSON, Justice.
On the 9th of November, 1951, appellants filed in the County Judge's Court of Orange County, Florida, their petition for the construction of paragraph numbered 1 of the last will and testament of Louie E. Vail, deceased. Said last will and testament was executed by Louie E. Vail on November 15, 1950. By paragraph numbered 1 the testatrix bequeathed 500 shares of stock in a certain insurance company to specifically named beneficiaries in the following language:
"I give and bequeath my five hundred shares of the stock of the St. Paul Fire and Marine Insurance Company, in equal parts, share and share alike, to the following five persons, to-wit:
My son, Kenneth F. Vail
My grandson, James David Vail
Nancy Carol Chamberlin
Lewis C. Chamberlin
Mrs. Foster McGaw
and I direct that if, at the date of my death, one or more of the said five persons shall have predeceased me, the share or shares of the one or ones so dying shall go to the survivors in equal parts." (Italics supplied.)
She made some more bequests of money unnecessary to be considered herein and then, in and by paragraph numbered 4 of her will, which was, as will be seen, a residuary clause, she devised the remainder of her estate to appellants. Said paragraph of the will reads:
"All the rest, residue and remainder of my estate I give, devise and bequeath, in equal parts, share and share alike, to:
Charles B. Vail, Residing in Milner, South Dakota
John Vail, also a resident of Milner, South Dakota

*667 Captain David Vail, now in Munich, Germany
Mary Margaret Trevathon, of Oskaloosa, Alabama
and I direct that if, at the date of my death, one or more of said four persons shall have predeceased me, the share or shares of the one or ones so predeceasing me shall go to the survivors in equal parts."
After the execution of the subject will and prior to the death of the testatrix, the stockholders of the St. Paul Fire and Marine Insurance Company authorized a two-for-one split-up of that company's capital stock, which resulted in the issuance to each stockholder of 2 shares for every share previously owned by him. After the meeting of the stockholders and on the same day, the Board of Directors of the company declared a stock dividend of one share upon each of the existing shares of stock.
The action of the stockholders and the Board of Directors of the St. Paul Fire and Marine Insurance Company resulted in Louie E. Vail during her lifetime receiving 2000 shares of stock upon the surrender by her of the 500 shares which she had previously held.
The Probate judge entered an order construing the will of Louie E. Vail, in which he upheld the contention of the specific legatees that they were and are entitled to all of the shares of stock, to-wit: 2000 shares owned by Louie E. Vail at the time of her death. Upon appeal, the Circuit Court affirmed the order entered by the County Judge's Court, and the residuary legatees are appellants here.
It is clear that the bequests in paragraph numbered 1 must be classified as specific and not general. In re McDougald's Estate, 149 Fla. 468, 6 So.2d 274. To ascertain the intent of the testatrix, we are aided by applicable rules of law. In Hurt v. Davidson, 130 Fla. 822, 178 So. 556, 557, we said that "while a will becomes effective at the death of a testator, the description of property specifically bequeathed must be applied to property as of the date of the will * * *." At the time Mrs. Vail executed her will, the description in question applied to property represented by 500 shares of stock in the St. Paul Fire and Marine Insurance Company, which was, as the words "my five hundred shares" connote, her entire interest in that corporation. But since the 500 shares had become 2,000 at her death, the point in controversy relates to the amount of this stock which should now pass to the specific legatees.
Appellants contend that this amount should be restricted to 1,000 of the present shares, representing the 500 shares owned by the testatrix at the time of execution of her will as affected by the stock split-up. That a stock split-up is a mere change in form and not in substance, and that additional shares so acquired pass under a specific bequest of the original shares, is too well settled for contradiction. See e.g., Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871; Heckler v. Young, 264 Ill. App. 34; Bireley's Adm'r v. United Lutheran Church, 239 Ky. 82, 39 S.W.2d 203; First Nat. Bank of Boston v. Union Hospital, 281 Mass. 64, 183 N.E. 247, 89 A.L.R. 1125; In re Mandelle's Estate, 252 Mich. 375, 233 N.W. 230; Adams v. Conqueror Trust Co., 358 Mo. 763, 217 S.W.2d 476, 7 A.L.R.2d 268; Chase Nat. Bank v. Deichmiller, 107 N.J. Eq. 379, 152 A. 697; Garabrant v. Callaway, 113 N.J. Eq. 424, 167 A. 1; Walton v. Walton, 7 Johns Ch., N.Y., 258, 11 Am.Dec. 456; In re Martin's Will, 252 N.Y. 582, 170 N.E. 151; In re Hicks' Will, 272 App.Div. 594, 74 N.Y.S.2d 246, affirmed without opinion 297 N.Y. 924, 79 N.E.2d 747; In re Hinners' Will, 216 Wis. 294, 257 N.W. 148. But cf. Davis v. Price, 189 Tenn. 555, 226 S.W.2d 290, which would appear to be outside the current of authority but for a statute there involved.
A specific bequest of stock also generally carries with it, for the same reasons, the results of corporate reorganizations, mergers, dissolutions, and other corporate structural alterations when the interest represented by the bequest can be traced through succeeding transactions. See cases cited in Annotation, 7 A.L.R.2d 276 et seq.
*668 On the other hand, it appears to be well settled that the specific legatee is not entitled to a cash dividend declared and paid after the execution of the will and prior to the testator's death. Indeed, as appellants point out, in this very case a cash dividend was declared during this period but appellees make no claim to it.
Thus the question becomes squarely focused upon the significance and proper disposition of the 1,000 shares representing the stock dividend in this case.
The query posed herein is indeed a difficult one to resolve, and we have never before been faced with it. Appellants contend the rule is general that stock dividends declared after the execution of a will and before the death of a testator do not pass under a specific bequest of the original shares, but form part of the residuary estate. They insist that there is no difference between stock and cash dividends, which should therefore pass to residuary legatees together.
Appellees, on the other hand, hold the view that a stock dividend makes no change of substance in the stock originally bequeathed and consequently follows it under the specific bequest.
Examination of the decisions of our sister states discloses that those courts which have passed upon the question presently before this court are not of one accord with reference to the proper answer thereto. Our study of the numerous cases cited by counsel in their able briefs, and our own research, have convinced us that while many if not most of the cases are distinguishable on their facts, the real conflict comes as a sharp clash in theory, with the lines drawn just as they are in the instant case. This is illustrated in part by a comparison of the majority and minority opinions in Succession of Quintero, 209 La. 279, 24 So.2d 589, 162 A.L.R. 1150, a split decision favoring the position of the specific legatees here, in which the authorities are so exhaustively considered and discussed that we shall curtail our discussion of them.
True it is that the sheer numerical weight of authority appears to favor the position urged upon us by appellants. But close examination of the cases holding residuary legatees entitled reveals that many of the courts concerned have been swayed by the argument that there is no real difference between a cash dividend and a stock dividend because when a corporation declares a stock dividend it simply transfers to its capital account surplus or accumulated funds which would otherwise be paid or payable in cash to the stockholders. See, e.g. Sherman v. Riley, 43 R.I. 202, 110 A. 629, Hicks v. Kerr, 132 Md. 693, 104 A. 426, 10 A.L.R. 1323, and Griffith v. Adams, 106 Conn. 19, 137 A. 20. In the case last cited the court states, 137 A. at page 23 of the opinion, "A stock dividend paid for out of surplus and distributed to stockholders does not differ from any other form of dividend."
We are not persuaded to adopt the view that there is no real difference between a cash dividend and a stock dividend. It seems to us that the line of authority referred to above overlooks the great parallel body of law that there are many real differences, and we regard those differences as controlling here. When a stockholder receives a cash dividend he has absolute, unbridled dominion and control of something which has been placed outside the corporate structure. A stockholder who receives a stock dividend, however, has a limited, circumscribed dominion and control of the assets of the corporation in which his dividend shares represent an interest. A stock dividend has been characterized as "not a dividend at all in any true or usual sense of the word" and "merely an incident or process in corporate bookkeeping", while the term itself has been called a "misnomer" and a "self-contradiction." See 13 Am.Jur., Corporations, Sec. 648, pp. 642-645, and cases cited.
Appellants rely in great measure upon In re Brann, 1916, 219 N.Y. 263, 114 N.E. 404, L.R.A. 1918B, 663, which they say overruled all of the previous New York law on the subject (that law having been generally favorable to specific legatees) and which was cited and followed in Hicks v. Kerr, 132 Md. 693, 104 A. 426, supra, and Griffith *669 v. Adams, 106 Conn. 19, 137 A. 20, supra. In the Brann case, the Standard Oil Company of New Jersey, under an order of the United States Supreme Court, had distributed among its stockholders the shares which it held, as parent, in a large number of subsidiary oil companies. The question before the Court of Appeals of New York was whether or not these shares in the subsidiary companies, which had been received by a testator after he executed his will but before his death, were transmissible under a specific bequest of stock in the parent Standard Oil Company. So great and learned a jurist as Judge Cardozo, speaking for the Court, held that they were not. He pointed out that no distinction was justified on the ground that the dividend was compulsory, and stated: "The case stands the same as if the Standard Oil Company had sold the shares, and distributed the proceeds. * * * We cannot find substantial identity between this extraordinary dividend and the shares from which they came." 114 N.E. 404, 405.
But, in 1928, in Equitable Trust Co. v. Prentice, 250 N.Y. 1, 12, 164 N.E. 723, 725, 63 A.L.R. 263, Judge Cardozo had occasion to consider the difference between a stock dividend of exactly the kind we have here before us, and a cash dividend, and perhaps nowhere is that difference more clearly explained than in that opinion:
"Stock dividends in the true sense  i.e., dividends capitalizing surplus, as distinguished from those payable in the stock of a subsidiary (People ex rel. Clark v. Gilchrist, 243 N.Y. 173, 178, 153 N.E. 39; U.S. v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180)  have predominantly the quality of an increment to principal, though at times, in furtherance of intention, they have been classified as income. When a dividend is paid in cash, the ownership of the corporate assets is changed; the company owns less, and the shareholder owns more, or something essentially different, though its value be no greater. Upon the distribution of a stock dividend, ownership of the assets is precisely as it was. `A stock dividend does not distribute property, but simply dilutes the shares as they existed before.' Williams v. Western Union Tel. Co., 93 N.Y. 162, 189."
This is the theory we adopt, and we hold that the stock dividend in this case, representing a mere dilution in the number of shares originally bequeathed, without change in ownership of the corporate assets, passed to the specific legatees. Cf. Butler v. Dobbins, 142 Me. 383, 53 A.2d 270, 172 A.L.R. 361. The gift could have been adeemed, in whole or in part by action of the testatrix in disposing of her shares, but it was not. Cf. Hurt v. Davidson, supra, 130 Fla. 822, 178 So. 556. It could have been adeemed partially by action of the corporation in the declaration of a cash dividend, and it was. But the remainder is intact, and must be delivered to the specific legatees.
The result we have reached renders it unnecessary to consider extensively the point, also raised by appellants, that the stock dividend constituted after-acquired property within the meaning of F.S.A. § 731.05(2) and "net income, interest or increase" under F.S.A. § 731.22, since because of the nature of a true stock dividend, discussed above, we are of the opinion that neither section is applicable. So much reliance, however, is placed upon Sec. 731.05 (2) that for clarity we refer appellants to the history of that section as outlined in DePass v. Kansas Masonic Home Corp., 132 Fla. 455, 461-463, 181 So. 410, 412-413, where we adopted an opinion by Mr. Justice Sebring (then Circuit Judge) in which he pointed out that prior to June 13, 1892, in Florida, after-acquired property did not pass by will at all, Frazier v. Boggs, 37 Fla. 307, 20 So. 245, whereas the Revised Statutes of 1892, Sec. 1794, based in part upon the English Wills Act of 1837, specifically provided that the every will containing a residuary clause should transmit after-acquired property. At the time the DePass case was decided, this provision, Sec. 5477(2), 1934, Supp., Compiled General Laws of Florida 1927, was expressed in part as follows:
*670 "Every will containing a residuary clause shall transmit after-acquired property, unless the testator expressly states in his will that such is not his intention."
It will be noted that this language is identical with the last sentence of present F.S.A. § 731.05(2). The primary purpose of this section, then, was to permit transmissal of after-acquired property by will rather than by intestacy, and the expression of contrary intention contemplated by the statute is therefore an expression of intention that after-acquired property shall not pass under the will.
Finally, appellants assign as error the apparent reliance, by the Circuit Judge, upon certain items of extrinsic evidence of intent of the testatrix, Mrs. Vail, which had been admitted, over objection, by the County Judge. We hold that the result reached by the Circuit Court was sound without reference to the extrinsic evidence of intent, and the error, if any, was harmless.
It follows that the final decree from which this appeal is prosecuted should be, and it is hereby
Affirmed.
ROBERTS, C.J., and MATHEWS and DREW, JJ., concur.