The bill is filed for the judicial interpretation of the will of Albert W. Satterthwaite, deceased.
The first question arises under item third of the will, whereby testator gives to his trustee in trust for the use of his wife (and daughters, under certain circumstances), during her life or widowhood —
"Any and all real estate which I may own in Crosswicks, Burlington county, New Jersey, and particularly my home known as Brookside Lawn, together with all the furniture, furnishings, household and kitchen utensils and all other chattels used by me and my family in said home."
Decedent's residence, Brookside Lawn, was a small farm or estate, having on it in addition to the dwelling house, a barn, garage and chicken houses, and also certain chattels not in the dwelling house itself, to wit, two automobiles, two cows, some chickens, and certain agricultural machines and implements.
The question is whether these last mentioned chattels pass under the language of the gift above quoted. It is concluded that they do.
It appears that the decedent was retired; that he was engaged in no business, but farmed a small portion of the lands to raise produce for his home; that the home was in the country, at a considerable distance from town and that the automobiles were used (and were necessary for that purpose), for the making of trips to town, to stores, to railroad station, and the like, in the usual life of the family at the home.
The words of the testator are "all other chattels used by me and my family in said home," the word "home" means *Page 381 
not merely the dwelling house, but the entire residence estate. The words first used — "furniture, furnishings, household and kitchen utensils," certainly include all chattels in the house;
hence "all other chattels" must mean chattels other than those in the house.
The remaining question arises under item fourth, of the will, whereby the testator gives to the trustee, in trust, to pay the income to the wife for life —
"Eight hundred shares of the capital stock of the F.W. Woolworth Company which I now own and possess, or in case I shall not own and possess same at the time of my decease its equivalent in cash or securities at market value at the time of my decease —"
The will was drawn and executed in March, 1926. At that time testator "owned and possessed" four thousand two hundred shares of the stock in question (and had also some additional shares in the possession of a brokerage house). Unquestionably the bequest is of eight hundred of those four thousand two hundred shares — not the shares he owned and possessed at his death. Cf.Henderson v. Henderson, 77 N.J. Eq. 317.
In 1927 the Woolworth Company declared a stock dividend of fifty per cent., increasing testator's holdings (outside the brokerage account) of four thousand two hundred shares to six thousand three hundred shares. In June, 1929, there was a "split up" of the stock, whereby the company issued to stockholders two and one-half of new shares in place of each share theretofore held. This increased testator's six thousand three hundred shares to fifteen thousand seven hundred and fifty shares. Testator died April 8th, 1930, still owning and possessing these fifteen thousand seven hundred and fifty shares.
The issue is as to whether, under the clause of the will above quoted, the wife takes an equitable life estate in only eight hundred of these fifteen thousand seven hundred and fifty shares, or in the three thousand shares (to which the original eight hundred have now increased in the manner *Page 382 
above described). It is concluded that the latter view is the correct one.
The bequest of "eight hundred shares of the capital stock of the F.W. Woolworth Company which I now own and possess" is a specific legacy. Burnett v. Heinrichs, 95 N.J. Eq. 112. The direction for substitution of an alternative gift, if he does not own and possess at his death the shares bequeathed, is an additional evidence that the gift is specific (Blair v.Scribner, 65 N.J. Eq. 498; reversed, Blair v. Scribner,67 N.J. Eq. 583, but not on that point), although in the present case such corroboration is not necessary.
A specific legacy is adeemed only when the subject is lost, destroyed or subsequently disposed of by testator, or so altered in form, by testator's subsequent acts, as to indicate a change of testamentary intent on his part. Conversely, if the subject, although somewhat changed in form, be not sufficiently changed to indicate change of testamentary intent — there is no ademption. See In re Cooper, 95 N.J. Eq. 210.
Intent is therefore — under the law in this state at any rate — a material factor in an issue as to an ademption of a specific legacy. This is entirely logical, for a testator's whole will is simply an expression of his intent, as to the disposition of his property after his death. The one fundamental rule of testamentary interpretation is to give effect, if possible, to the testator's intent, if that intent can be determined from the whole will and the surrounding circumstances.
In the instant case, the legacy is given to the wife, as expressly set forth, for her maintenance and support. Obviously the thing which testator intended to give was not the mere paper certificates for eight hundred shares of stock, but the interest in the company which those shares represented. The evidence showed that at the date of the will those shares had a market value of $180 apiece; the eight hundred shares had an aggregate value of nearly $150,000. It was that interest, worth approximately $150,000, which testator bequeathed. At the time of testator's death that *Page 383 
interest was represented not by eight hundred of the total number of shares of stock then extant, but by three thousand of such shares. At testator's death, the evidence showed, the value of a single share was only $68 — the value of eight hundred of such shares, only a little over $50,000.
It is clear that at the time of the making of the will the total net assets of the corporation were represented by the total number of shares of stock then issued and outstanding and that each share of stock represented an aliquot part of the total net assets. The acts of the corporation in increasing the number of shares issued — not by selling additional shares in exchange for additional capital, but simply by multiplying the shares of stock outstanding by three and three-quarters, without any increase in the net assets — had no other result than this: that the interest in the corporation which theretofore had been represented by one share of old stock was thereafter represented by three and three-quarters shares of the new stock.
The thing bequeathed, then — the interest in the corporation represented by eight hundred shares of stock at the time of executing the will — was still owned and possessed by testator at the time of his death, slightly changed in form (i.e., being then represented by three thousand shares of stock), but not sufficiently changed to indicate a change of testamentary intent. The bequest in the will therefore must be deemed to carry the thing bequeathed, in its altered form, i.e., the three thousand shares.
In Prendergast v. Walsh, 58 N.J. Eq. 149, a similar result was reached in a case similar in principle. In In re Clifford,L.R. 1912, 1 Ch. 29, a like result was reached in a case similar in facts as well as principle. See, also, Pope v. Hinckley,209 Mass. 323. *Page 384