allowed by law, such as stenographer's costs, specifically authorized by the above Act. The rehearing is refused.

**24 So.2d 589**

**Succession of QUINTERO.**

**No. 37261.**

April 30, 1945.

On Rehearing Jan. 7, 1946.

R. C. Milling, of New Orleans, for Dorothy Spencer, appellant.

Charles I. Denechaud, Charles I. Denechaud, Jr., and John T. Charbonnet, all of New Orleans, for Loyola University, appellee.

O'NIELL, Chief Justice.

The widow of Lamar C. Quintero died leaving a will in which she bequeathed to Miss Dorothy Spencer several particular legacies, including 20 shares of the capital stock of the Times-Picayune Publishing Company. That was the extent of Mrs. Quintero's ownership of stock in the corporation at the time when she made her will, and was represented by 2 certificates for 10 shares each, of the par value of $100 per share. Nearly three months after

Mrs. Quintero made her will, and during her lifetime, the Times-Picayune Publishing Company declared a 100 per cent stock dividend, out of surplus and undivided profits accumulated in the years previous to the date of the will. The stock dividend was charged against this accumulation of surplus and undivided profits, and the corporation then issued to each stockholder a certificate, or certificates, for the amount of capital stock which he or she already owned. Accordingly, an additional stock certificate was issued to Mrs. Quintero, for 20 shares, of the par value of $100 per share. The only outstanding stock of the corporation was its original issue of common stock, amounting to less than half of its authorized capital; and the corporation owed no bonds or other funded debt.

About a year after receiving the stock dividend Mrs. Quintero died, having in her possession the three stock certificates, representing 40 shares of the increased capital stock of the corporation. The testamentary executor, in a provisional account rendered to the court, listed the 40 shares of stock as belonging to Miss Spencer, because they represented identically the same interest which the testatrix had in the total capital stock of the corporation at the time when she made her will, bequeathing to Miss Spencer that interest in the total capital stock of the corporation, and describing the legacy correctly as 20 shares of stock. Ten legatees, to each of whom Mrs. Quintero had bequeathed a certain sum of money, opposed the provisional account, claiming that the 20 shares of stock representing the stock dividend should be

converted into cash, to be applied to a deficit in the amount of cash available for the payment of the ten cash legacies. The judge decided in favor of the ten legatees. Miss Spencer is appealing from the decision.

In Mrs. Quintero's will, immediately following the particular legacies, including the legacies to Miss Spencer, is a stipulation that all inheritance taxes that might be due on these legacies shall be paid out of the estate, and not out of the particular legacies. Immediately following that stipulation are the ten cash legacies, amounting to $34,200, ranging in amount from $200 to $5,000, bequeathed to the ten legatees who are contesting Miss Spencer's claim. The testatrix expressed the desire that the ten cash legacies should be paid in full and that any inheritance tax that might be due on them should be paid out of the residue of the estate, but that, if the value of the estate should not be sufficient to pay the ten cash legacies in full, they should be reduced proportionately. Mrs. Quintero bequeathed the residue of her estate to Mrs. Elize Goodey and Miss Spencer jointly, and named the Hibernia National Bank in New Orleans as executor. The value of the estate was not enough to pay the ten cash legacies in full.

What Mrs. Quintero intended to bequeath and did bequeath to Miss Spencer was the proportionate share or interest which Mrs. Quintero owned in the total outstanding capital stock of the Times-Picayune Publishing Company. The reason why the testatrix described the legacy as 20 shares of stock was that the legacy

was then evidenced or represented by the two certificates for 10 shares each. That evidence or representative of the incorporeal property which constituted the legacy was changed into three certificates for 40 shares, by the declaring of the stock dividend, but the value or identity of the legacy, as being a certain proportion of the total outstanding capital stock of the corporation, was not changed by the issuing of the new or additional evidence or representative of the incorporeal property. It is declared in article 1716 of the Civil Code that a mistake made in naming or describing a legacy in a will is of no moment "if it can be ascertained what the thing was which the testator intended to bequeath." What Mrs. Quintero intended to bequeath and did bequeath to Miss Spencer was properly called 20 shares of stock in the Times-Picayune Publishing Company at the time when the will was made; and the subsequent conversion of the legacy into 40 shares of the increased capital stock in the corporation did not change the substance or value or the identity of the incorporeal property which was bequeathed to Miss Spencer. The three certificates, amounting to 40 shares, which Mrs. Quintero held at the time of her death, constituted merely the evidence of the same incorporeal right which she had bequeathed to Miss Spencer, and which was evidenced originally by the two certificates for 10 shares each. The record does not show nor does it matter what was the total number of outstanding shares of stock in the corporation. For the purpose of illustrating, we may assume any number to be the

true number of outstanding shares of stock at the time when the will was made. For example, if the total number of shares was 1,000, Mrs. Quintero's 20 shares constituted one-fiftieth of all of the capital stock of the corporation; and when she received her stock dividend of 20 additional shares her 40 shares still represented one-fiftieth of the total outstanding capital stock of the corporation. When she received the additional certificate for the 20 shares representing the stock dividend she knew that she had not bought or paid for any additional stock, and she knew that the additional stock certificate was merely additional evidence of the interest which she already owned in the total amount of outstanding capital stock in the corporation. Hence she saw no necessity for adding a codicil to her will, or for making a new will, in order to make a testamentary disposition of that which she had already bequeathed to Miss Spencer under the description of 20 shares of stock in the Times-Picayune Publishing Company. At the time when Mrs. Quintero made her will she had no reason to anticipate that the Times-Picayune Publishing Company might declare a stock dividend and thus change the evidence—without changing the substance or identity—of her interest as a stockholder in the corporation. Hence at the time when she made her will she had no intention at all as to what disposition she might eventually make of any stock dividend that she might receive from the Times-Picayune Publishing Company. She knew that the legacy of 20 shares of stock which she bequeathed to Miss Spencer would not entitle Miss Spencer to any ad-

ditional stock which Mrs. Quintero might afterwards acquire by purchase, or except as a stock dividend. When she described the legacy as 20 shares of stock she intended to bequeath and did bequeath the interest which she then owned in the total outstanding stock of the corporation. That interest was identically the same at the time when Mrs. Quintero died as it was when she made her will. It is likely that Mrs. Quintero regarded her interest in the total outstanding capital stock of the Times-Picayune Publishing Company, at the time when and after she made her will, in the broad sense in which shares of stock in a corporation are generally regarded,—thus:

"In its primary sense a share of stock is simply one of the proportionate integers or units, the sum of which constitutes the capital stock of the corporation. In a broader sense, a share of the capital stock of a corporation may be defined as the interest or right which the owner, who is called the 'shareholder' or 'stockholder', has in the management of the corporation, and in its surplus profits, and, on a dissolution, in all of its assets remaining after the payment of its debts". 11 Fletcher Cyclopedia Corporation, § 5083, pp. 28, 29. See also 18 C.J.S., Corporations, § 194, pp. 619–623.

This court has not had occasion heretofore to decide whether a stock dividend, by which a corporation increases the amount of its outstanding capital stock and distributes the increase among all of the shareholders in the same proportion in which they already own all of the capital stock, should be regarded as revenue de-

rived by each shareholder from the shares already owned by him, or should be regarded merely as a part of each shareholder's original interest in the total outstanding capital stock of the corporation—formerly evidenced by a less number of shares. But the court has had occasion to apply the principle which should govern in deciding this case. In the Succession of Shaffer, 50 La.Ann. 601, 23 So. 739, the testator, William L. Shaffer, bequeathed to his wife certain promissory notes described in the will as the notes secured by mortgage on Ellendale Plantation. The notes were signed by Miss Nellie McCollam and her three brothers, Alex., William, and Ed. McCollam. Miss Nellie McCollam died, leaving as her heirs the three brothers. Thereafter one of them, William McCollam, died, leaving as his heirs minor children. Thereafter William L. Shaffer foreclosed on the mortgage notes, which he had bequeathed to his wife; and, under an agreement between him and the two McCollam brothers, Alex. and Ed. McCollam, the purchaser of Ellendale Plantation sold it to Alex. and Ed. McCollam for $23,000, represented by four mortgage notes for $5,750 each, signed by Alexander and Ed. McCollam and delivered to Williiam L. Shaffer. The widow of William L. Shaffer claimed the four notes, amounting to $23,000, under the will in which she was bequeathed the original mortgage notes, which were extinguished by the foreclosure proceeding. The four new mortgage notes were for the amount of the original debt; and it was stated in the opinion rendered in the case that the makers of the new notes, Alex. and Ed. McCollam, were "practically the same" debtors as the original debtors. Hence it was held that, inasmuch as the four new mortgage notes, for $5,750 each, represented the same indebtedness that was represented by the original mortgage notes which the testator had bequeathed to his wife, she was entitled to the four new notes, amounting to $23,000, in lieu of the original notes referred to in the will. The analogy between that case and this is that in this case the incorporeal property which Mrs. Quintero bequeathed to Miss Spencer, and which consisted of Mrs. Quintero's proportionate interest in the total amount of outstanding capital stock of the Times-Picayune Publishing Company, was identically the same incorporeal property which Mrs. Quintero owned at the time of her death, and which was then evidenced and represented by the three certificates for 40 shares of the increased capital stock of the corporation. The only change that was made with regard to the legacy, between the date of the will and the date of the death of the testatrix, was in the written instruments evidencing or representing the incorporeal property. That was true also in the Succession of William L. Shaffer.

In other jurisdictions there are cases holding—under the facts peculiar to the case—that a testamentary bequest of a given number of shares of stock in a corporation does not of itself entitle the legatee to a stock dividend declared subsequent to the making of the will but before the death of the testator. And there are decisions—where the facts were similar to the instant case—maintaining that such a testamentary

bequest does entitle the legatee to the stock dividend. A lineup of the decisions cited on each side of the question is published in 10 A.L.R. 1326, in the Annotation of Hicks v. Kerr, 132 Md. 693, 104 A. 426, and in 89 A.L.R. 1130, in the Annotation of First National Bank v. Union Hospital, 281 Mass. 64, 183 N.E. 247. Both of those decisions, as well as the decision in McGregory v. Gaskill, Mo.App., 296 S.W. 833, by the St. Louis Court of Appeals, and In re Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A. 1918B, 663, and Sherman v. Riley, 43 R.I. 202, 110 A. 629, are cited by the ten opponents of Miss Spencer's claim, to support their argument that she is not entitled to the stock dividend. Miss Spencer, on the other hand, distinguishes those cases from her case, and cites in support of her claim the following cases: Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 34 L.Ed. 525; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Heckler v. Young, 264 Ill.App. 34; Chase National Bank v. Deichmiller, 107 N.J.Eq. 379, 152 A. 697; In re Hinners' Will, 216 Wis. 294, 257 N.W. 148; Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871; In re Mandelle's Estate, 252 Mich. 375, 233 N.W. 230; and In re Bradley's Estate, 119 Misc. 2, 194 N.Y.S. 888.

In Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 1058, 34 L.Ed. 525, Mrs. Ann W. Smith bequeathed certain stocks and bonds to her daughter, Mrs. Jane Owen Mahon, in trust for the benefit of another daughter, Mary Ann Gibbons. The testatrix stipulated in her will that the trustee, Mrs. Mahon, should pay to Mary Ann Gibbons during her lifetime the dividends on the stock and the interest on the bonds as they would accrue, and that on the death of Mary Ann Gibbons the stocks and bonds and the income thereof should revert to Mrs. Mahon. Included in the stocks described in the legacy were 280 shares of stock in the Washington Gaslight Company. At the time of the death of the testatrix, the total amount of the outstanding capital stock of the corporation was $500,000, consisting of 25,000 shares of the par value of $20 each. After the death of the testatrix, but during the existence of the trust, the capital stock of the corporation was increased to $1,000,000, by a resolution of the board of directors and in accordance with an Act of Congress, and the new shares were distributed among all of the shareholders as a stock dividend in proportion to their ownership of the original $500,000 of capital stock. Mrs. Mahon, as trustee, surrendered to the gaslight company the 280 shares mentioned in her mother's will, and they were transferred on the books of the corporation to Mrs. Mahon as trustee. Thereafter the corporation delivered to Mrs. Mahon, as trustee, a new certificate for 560 shares of stock in place of the original 280 shares. Mrs. Mahon, as trustee, paid to Mary Ann Gibbons, from time to time, the cash dividends declared on the 560 shares of stock, but did not transfer to her the 280 new shares. Mary Ann Gibbons filed a suit in equity in the Supreme Court of the District of Columbia to compel Mrs. Mahon, as trustee, to transfer to Mary Ann Gibbons the 280 new shares of stock, as revenue derived from the original 280 shares. The court dismissed the suit, 4 Mackey 130, 54 Am.Rep

262, and the Supreme Court of the United States affirmed the judgment. In the opinion rendered by the supreme court it was declared:

"The question presented by the claims made in the bill and answer and by the arguments of counsel is whether the two hundred and eighty new shares of stock in the Washington Gaslight Company are to be treated as dividends, to the whole or part of the principal of which the plaintiff is entitled under the will, or are to be treated as an increase of the capital of the trust fund, and the plaintiff therefore entitled to receive only the income thereof.

\* \* \* \* \* \*

"In ascertaining the rights of such persons [persons claiming an interest in the succession of a testator], the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares. \* \* \*

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all

the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

The opponents of Miss Spencer's claim attempt to distinguish Gibbons v. Mahon from this case by considering that the stock dividend of 280 shares of the gaslight company was declared after the death of the testatrix; whereas, in the present case, the stock dividend was declared before the death of the testatrix. But the important feature of the case of Gibbons v. Mahon is that the shares of stock in the gaslight company remained in trust during the lifetime of the cestui que trust, Mary Ann Gibbons, and the stock dividend was declared during the existence of the trust. Those facts make the decision in Gibbons v. Mahon entirely appropriate to the present case. Besides, Mary Ann Gibbons, in her suit, made the alternative demand that if she should not be declared entitled to all of the 280 shares of the stock dividend she should have as many of the shares thereof as represented the earnings made by the gaslight company subsequent to the death of the testatrix. The court found that the greater part of the surplus or undivided profits from which the stock dividend was declared was earned previous to the death of the testatrix; and, as to that part that represented earnings made subsequent to the death of the testatrix, the court de-

clared that it would not substitute its estimate "for the discretion of the corporation, lawfully exercised through its directors." The court added:

"The resolution is clearly an apportionment of the new shares as representing capital, and not a distribution or division of income. As well observed by Mr. Justice James, delivering the opinion of the court below:

" 'Certificates of stock are simply the representative of the interest which the stockholder has in the capital of the corporation. * * * A dividend is something with which the corporation parts, but it parted with nothing in issuing this new stock. It simply gave a new evidence of ownership which already existed. They were not in any sense, therefore, dividends for which this trustee had to account to the cestui que trust. She stood, after the issue of the new shares, just as she had stood before; and the trustee was obliged to treat them just as she did, namely, as a part of the original, and to pay the dividends to the cestui que trust.' "

In Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, it was held that Congress was not given the power by the income tax amendment of the Federal Constitution to tax, without apportionment, as income of a stockholder in a corporation, a stock dividend made lawfully and in good faith against accumulated profits earned by the corporation subsequent to the adoption of the amendment, because stock dividends are not income of the stockholder.

In Heckler v. Young, 264 Ill.App. 34, the testatrix made her will in January, 1929, in which she bequeathed to Virginia Heckler 30 shares of the capital stock of the Union Carbide & Carbon Corporation. The testatrix then owned 70 shares, but by a resolution of the board of directors of the corporation, on April 16, 1929, the corporation increased its outstanding capital stock from 3,000,000 to 9,000,000 shares and exchanged with each stockholder three shares of the new issue for one share of the original issue of stock. The testatrix died on August 28, 1929; and the legatee, Virginia Heckler, claimed 90 shares of the new issue of stock owned by the testatrix, in lieu of the legacy of 30 shares of the original issue. In opposition to her claim it was contended that the failure of the testatrix to make a codicil, or to make a new will, disposing of the additional shares which she received as a stock "split-up" after making the will, was evidence of an intention on her part that Virginia Heckler should receive only 30 shares of the new issue of stock. Answering the argument the court quoted from Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871, thus:

" 'As to the argument derived from the testator's failure to change his will after the par value of the stock was reduced, it is enough to say that if we have correctly interpreted testator's original intent, he might well suppose that there was no occasion to make any change.' Furthermore, a stock split-up in shares, without a change in the comparative interest in the corporation is merely a change in form and

does not cause a change in the nature of the shares thus effected [affected]." Citing Blinn v. Gillett, 208 Ill. 473, 70 N.E. 704, 100 Am.St.Rep. 234; DeKoven v. Alsop, 205 Ill. 309, 68 N.E. 930, 63 L.R.A. 587.

In Chase National Bank v. Deichmiller, 107 N.J.Eq. 379, 152 A. 697, 699, the testator bequeathed to his wife for life the income from 800 shares of capital stock of the F. W. Woolworth Company. The testator then owned 4,200 shares of stock in the corporation. Thereafter, during the lifetime of the testator, the corporation declared a stock dividend of 50%, thus increasing the testator's holdings from 4,200 to 6,300 shares. Thereafter, but during the lifetime of the testator, the corporation made a "split-up" of its stock by issuing to each stockholder 2½ shares of new stock for each share of the old stock. The effect was to increase the number of the testator's shares from 6,300 to 15,750. At his death he owned and possessed the 15,750 shares. The court stated and decided the issue thus:

"In·the instant case, the legacy is given to the wife, as expressly set forth, for her maintenance and support. Obviously the thing which testator intended to give was not the mere paper certificates for 800 shares of stock, but the interest in the company which those shares represented. * * *

"It is clear that at the time of the making of the will the total net assets of the corporation were represented by the total number of shares of stock then issued and outstanding, and that each share of stock

represented an aliquot part of the total net assets. The acts of the corporation in increasing the number of shares issued, not by selling additional shares in exchange for additional capital, but simply by multiplying the shares of stock outstanding by 3-3/4, without any increase in the net assets, had no other result than this, that the interest in the corporation which theretofore had been represented by one share of old stock was thereafter represented by 3-3/4 shares of the new stock.

"The thing bequeathed, then, the interest in the corporation represented by 800 shares of stock at the time of executing the will, was still owned and possessed by testator at the time of his death, slightly changed in form (i. e., being then represented by 3,000 shares of stock), but not sufficiently changed to indicate a change of testamentary intent. The bequest in the will therefore must be deemed to carry the thing bequeathed, in its altered form (i. e., the 3,000 shares)."

In the case entitled In re Hinners' Will, 216 Wis. 294, 257 N.W. 148, the testator, in a codicil to his will, bequeathed to his wife 225 shares of stock in a corporation, of which he owned 830 shares at the time when he made the codicil. Thereafter, but during the lifetime of the testator, by a resolution· of the board of directors the outstanding 4,500 shares of common stock, which was all of the outstanding stock of the corporation, was ordered exchanged for 2,250 shares of preferred stock and 22,500 shares of common stock, and at the same time the corporation declared a preferred stock dividend of 5,850 shares to

be distributed pro rata among the shareholders in proportion to their holdings of the original 4,500 shares of common stock. The widow claimed that proportion of the new stock (including the stock dividend) which 225 bears to 4,500. The Supreme Court of Wisconsin maintained her claim, announcing its holding thus:

"Where reorganization of capital structure of corporation was merely formal change and substitution of new shares of stock for old, legatee, under bequest of 225 shares of 'my stock' in company, became entitled to shares of new common and preferred stock, including a preferred stock dividend which accrued prior to death of testator and which was received by stockholders as part of exchange and reorganization, in proportion which new shares bore to original 225 shares."

In the course of the opinion rendered in that case, the court quoted with approval from the following cases: Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871; In re Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A.1918B, 663; Chase National Bank v. Deichmiller, 107 N.J.Eq. 379, 152 A. 697. The court quoted from In re Brann, which is cited by the opponents of Miss Spencer's claim, the following excerpt [219 N.Y. 263, 114 N.E. 405]:

"It may be that where the change is merely formal, as where a company is reorganized and there is a reissue of the shares, the identity of the gift will be held to be substantially preserved."

In Fidelity Title & Trust Co. v. Young, 101 Conn. 359, 125 A. 871, the testator, in the third clause of his will, bequeathed to the Fidelity Title & Trust Company, as trustee for his wife, the income from 250 shares of capital stock of a corporation styled Butler Brothers, of the par value of $100 per share, with the stipulation that at the death of his wife the revenue should go to their two daughters, share and share alike. In the fifth clause of his will he bequeathed to Albertina M. Jones 150 shares of the capital stock of Butler Brothers. After the will was made but during the lifetime of the testator the corporation reduced the par value of its stock from $100 to $20 per share, and issued five shares for one, and at the same time increased its capital by issuing additional shares of the par value of $20 each. The testator exchanged his certificates, for 840 shares of the par value of $100, for certificates for 4,200 shares of the par value of $20, and also subscribed for 420 shares of the new $20 stock, some of which he afterwards sold, leaving 4,465 shares of stock of the par value of $20 per share, which he held at the time of his death. Meanwhile his wife died, and her two daughters claimed 1,250 shares, or 625 shares each, of the new stock of the par value of $20 per share, in lieu of the 250 shares of $100 par-value stock bequeathed to their mother. And Albertina M. Jones claimed 750 of the $20 shares in lieu of the 150 of the $100 shares that were bequeathed to her. The court held that the two daughters of the testator were entitled to the 1,250 shares, or 625 shares each, of the new $20 stock, and that Albertina M. Jones was entitled to 750 shares of the new $20 stock.

In the case entitled In re Mandelle's Estate, 252 Mich. 375, 233 N.W. 230, the testatrix bequeathed to Dr. Hunt 1,200 shares of the capital stock of the corporation styled Parke, Davis & Company, of the par value of $25 per share. Thereafter, but during the lifetime of the testatrix, the corporation issued no-par-value stock to be exchanged for the outstanding $25 par-value stock in the ratio of five shares of no-par-value stock for one share of the $25 par-value stock; and the testatrix exchanged her $25 par-value stock, amounting to 3,744, for five times as many (18,720) shares of no-par-value stock. At her death she held the no-par-value stock. The executors of her estate asked the court for instructions as to whether Dr. Hunt was entitled to 6,000 shares of the no-par-value stock in lieu of the 1,200 shares of the $25 stock bequeathed to him. The probate court held that the bequest of 1,200 shares of the original $25 par-value stock entitled Dr. Hunt to 6,000 shares of the no-par-value stock subsequently issued to the testatrix. The Supreme Court of Michigan affirmed the judgment.

In the case entitled In re Bradley's Estate, 119 Misc. 2, 194 N.Y.S. 888, decided by the Surrogate's Court of Orange County, New York, it was held that a transformation of the stock of one national banking corporation into the stock of another national banking corporation, organized to succeed the former banking corporation, did not work an ademption of a legacy of stock in the former national banking corporation.

We take up now the decisions which are cited by the opponents of Miss Spencer's claim, but which are really not in conflict with the decisions cited by her.

In Hicks v. Kerr, 132 Md. 693, 104 A. 426, 10 A.L.R. 1323, the testatrix bequeathed to her daughter Ella K. Hicks, wife of R. Randolph Hicks, 42 shares of stock in the Northern Central Railway Company, "now registered in my name." In the will it was provided that if Mrs. Hicks should die before the testatrix the legacy should go to the legatee's husband, R. Randolph Hicks. After the will was made but before the death of the testatrix the corporation declared a stock dividend of 40%, besides a cash dividend on its capital stock, in consequence of which the testatrix received an additional certificate for 16 shares of stock. At her death, R. Randolph Hicks claimed the 16 shares representing the stock dividend, as well as the original 42 shares of stock mentioned in the will. In deciding against him the court quoted and stressed the description of the legacy, as being the 42 shares "now registered in my name", and held that that was such a specific identification as to exclude any stock not registered in the name of the testatrix at the time when she made her will. We are not concerned now with the question whether that limitation on the description of the stock, as being the 42 shares "now registered in my name", was sufficient to exclude the stock dividend, which of course was not then registered in the name of the testatrix. It is sufficient to say that there is no such limitation on

the legacy of the shares of stock bequeathed by Mrs. Quintero to Miss Spencer. Hence the ruling in Hicks v. Kerr is not appropriate to this case.

In the second case cited by the opponents of Miss Spencer's claim, First National Bank of Boston v. Union Hospital, 281 Mass. 64, 183 N.E. 247, 248, 89 A.L.R. 1125, the testator, Earle P. Charlton, while preparing his will, deposited in the trust department of the First National Bank of Boston 10,000 shares of the common stock of the F. W. Woolworth Company of the par value of $25 per share, to be held for him subject to his order. He stated to the trust officer that he would make a provision in his will with regard to the 10,000 shares of stock, and that he therefore wished the stock kept separate because of his having a purpose with regard thereto, which he would disclose later. In the seventh clause of the will, which was dated two weeks after the testator deposited the 10,000 shares of stock with the trust officer of the bank, the testator declared:

"Whereas I have deposited with the First National Bank of Boston—Trust Department—Ten Thousand (10,000) shares of F. W. Woolworth Co. Common Stock, at a nominal value as of to-day of Two million dollars ($2,000,000.00), and whereas it is my intention to leave this stock in their custody during my natural life, or the proceeds of any sale that shall be made of this stock in the meantime, and I will and direct that at my death, it shall become a permanent trust fund to provide for the following charities," et cetera. [Here the testator described the several charities that were to receive the income from the 10,000 shares of stock.]

Thereafter, but during the lifetime of the testator, the F. W. Woolworth Company declared a stock dividend of 50%, of which dividend 5,000 shares were delivered to Charlton. Thereafter, he received and retained all cash dividends on the 10,000 shares which he had deposited. The corporation afterwards decreased the par value of its common stock to $10 per share and gave to its stockholders the right to exchange one share of the $25 stock for two and one half shares of the $10 stock. The First National Bank, with Charlton's consent, exchanged the 10,000 shares of $25 par-value stock which he had deposited with the bank for 25,000 shares of the $10 par-value stock. Thereafter the bank held the 25,000 shares of $10 par-value stock as agent for Charlton, subject to the terms of the original deposit. Cash dividends on the 25,000 shares held by the bank were received by Charlton and all of these dividends were retained by him up to the time of his death. The question in the case was whether the gift to the trustee for the benefit of the several charities was of 25,000 shares or of 37,500 shares of the $10 par-value stock. The court held that only the 25,000 shares of $10 par-value stock, representing the 10,000 shares of $25 par-value stock delivered by Charlton in trust to the bank, constituted the trust fund. The court held that the stock dividend of 50% consisting originally of 5,000 shares of $25 par value, and consisting at

the time of the death of the testator of 12,500 shares of the $10 par-value stock, did not form a part of the trust fund. The court based its opinion upon the finding that the bequest was a "specific legacy", described as including only the 25,000 shares of stock deposited in the trust fund in the bank. The court quoted the receipt which the trust officer gave to Charlton when he deposited the original 10,000 shares of the $25 par-value stock: "Received from Earle P. Charlton 10,000 shares F. W. Woolworth Co. Com. stock to be held subject to his order. (Disposition of same mentioned in his will dated Dec. 1925)." The court said that at that time the testator was preparing his will and expected to execute it in December, 1925, and hence that the will had reference to only the 10,000 shares of the par value of $25 per share, which were earmarked, so to speak, by being deposited in the bank under the instruction that it should constitute the trust fund referred to in the will—and which 10,000 shares were converted afterwards into 25,000 shares, of the par value of $10 per share. In that connection the court stated: "The gift of the stock was as the testator left it when he died—twenty-five thousand shares of $10 par value stock in the hands of The First National Bank of Boston." The principal reason why the court could not consider the stock dividend as a part of the trust fund was that the testator had reserved to himself—and collected the dividends on—the stock which represented the stock dividend, and thus had manifested his intention that that stock should not form a part of the trust fund deposited in the First National Bank. The decision, therefore, does not conflict with Miss Spencer's claim in this case. On the contrary, in one aspect of the decision cited, it supports Miss Spencer's claim; that is, that the substitution of the 25,000 shares of $10 par-value stock for the 10,000 shares of $25 par-value stock described in the will and deposited originally in the bank did not affect the substance or identity of the legacy.

The author of the annotation of the case of First National Bank v. Union Hospital, 89 A.L.R. 1130, refers to the cases holding that a specific bequest of stock does not carry with it a stock dividend declared during the lifetime of the testator, and in connection therewith the author comments thus:

"It may be noted that this rule may tend to defeat the intent of the testator. The value of the stock bequeathed may be greatly enhanced by undivided profits which testator understood to be a part of his gift of the stock itself, and if the profits are divided in the form of a stock dividend, the original value of the stock bequeathed is thereby greatly diminished, without bringing in any cash. *The testator may regard it as in fact unchanged so far as his bequest is concerned, and intend the increase to pass with the stock originally bequeathed.*" [Italics ours.]

The case of McGregory v. Gaskill, Mo. App., 296 S.W. 833, decided by the St. Louis Court of Appeals, is distinguished from the present case by the fact that the

testatrix in the case cited did not bequeath all of the shares that she owned in the corporation at the time when she made the will, but bequeathed only five shares, describing them as "my five (5) shares of stock in the Rome Brass and Copper Company", when she owned 20 shares of stock in the corporation. Fifteen of the twenty shares owned by the testatrix at the time when she made her will represented a stock dividend which she had received nearly 10 years before she made her will and more than 12 years before she died. At the time of her death she had received additional stock dividends increasing her holdings to 66 shares. The legatee, Mayme McGregory, claimed all of the 66 shares. The residuary legatee claimed all but the original 5 of the 66 shares. The court said that the case presented "an extremely close question", but concluded that, as the testatrix had bequeathed to Mrs. McGregory a smaller number of shares than she owned at the time when she made her will, it would be unreasonable to hold that she intended to bequeath the greater number of shares that she owned at the time of her death. There is no such reason in this case for holding that Mrs. Quintero did not intend to give all of the stock that she owned in the Times-Picayune Publishing Company at the time of her death, which stock was in fact the exact equivalent of the number of shares that she owned at the time when she made her will.

In the case entitled In re Brann, 219 N. Y. 263, 114 N.E. 404, L.R.A.1918B, 663, the legacy was described as "the 30 shares of stock of the Standard Oil Company owned by me." After the will was made, but during the lifetime of the testatrix, the Standard Oil Company, under compulsion of a decree of the United States Supreme Court to dispose of its stocks in 39 subsidiary corporations, distributed as a dividend among its stockholders the shares of stock owned by the parent company in the 39 subsidiary corporations. At the time of her death the testatrix owned the 30 shares of stock in the Standard Oil Company, as well as the shares which she had received as a dividend on that stock, in the 39 subsidiary corporations. The issue presented was stated by the court thus:

"The question is whether the shares in the 39 subsidiary companies pass as part of the original shares, or stand separate and by themselves, and pass to the residuary legatee."

It was not possible to consider the so-called stock dividend, consisting of shares of stock in 39 subsidiary corporations, as being an additional representative of the original 30 shares of stock in the parent corporation. In so deciding the court stated: "The case stands the same as if the Standard Oil Company had sold the shares, and distributed the proceeds."

In the case of Sherman v. Riley, 43 R.I. 202, 110 A. 629, certain questions were propounded to the Supreme Court of Rhode Island, among them being the question whether a certain legacy of stock in a corporation was a specific legacy, and if so whether it conveyed stock dividends arising therefrom previous to the death of the testator but payable thereafter. The court answered the question by quoting from

Clark and Marshall on Private Corporations, vol. 2, p. 1613, that a legatee of shares of stock is not entitled, unless by expressed provision of the will, to dividends declared before but payable after the testator's death. And, without giving any reason, the court answered that the rule was applicable also to stock dividends declared before the death of the testator but payable thereafter. The statement of the case does not furnish enough information to justify our considering the decision appropriate to the present case. As no reason was given for placing a stock dividend in the same category with a cash dividend, in determining whether the dividend formed a part of the incorporeal property represented by the original stock on which the dividend was declared, the opinion rendered in the case is not helpful in this case.

Our analysis of the decisions cited by the opponents of Miss Spencer's claim shows that they do not conflict with the decisions cited by her, or with our opinion in this case.

In article 1626 of the Civil Code it is declared that a legacy under a particular title gives to the legatee the title to "the thing bequeathed" from the time of the death of the testator, which title may be transmitted to the heirs or assigns of the legatee; but that the legatee cannot take possession of "the thing bequeathed" or claim the interest thereon or the proceeds thereof, except from the date on which he demands delivery thereof, or from the date on which delivery is made voluntarily. And in article 1631 it is declared that the interest on "the thing be-queathed", or the proceeds—meaning revenues—thereof, shall inure to the legatee from the time of the death of the testator: (1) when it is so declared in the will, or (2) when the legacy consists of an annuity or a pension given for the purpose of maintenance. These articles of the Code are applicable to a cash dividend on a legacy consisting of shares of stock in a corporation; but the articles are not applicable to a stock dividend unless in the peculiar circumstances of the case the stock dividend is dealt with as revenue derived from "the thing bequeathed." In the present case the stock dividend is not revenue derived from—but is a part of—the thing bequeathed.

In some of the cases to which we have referred an attempt was made to distinguish between a stock dividend, on the one hand, and a stock split-up, or new shares resulting from a reorganization of the corporation, on the other hand. But such a distinction is only nominal if the newly issued stock is merely new evidence, or a new representative, or additional evidence, or an additional representative, of the original incorporeal property which was evidenced or represented by the original shares of stock; for, if that is so, it matters not whether the newly issued shares result from the declaring of a stock dividend, or from a stock split-up, or from a reorganization. The question in any such case is whether the issuing of the new stock—whether as a stock dividend or as a result of a stock split-up or as the result of a reorganization—effects an actual change in the identity of the incor-

poreal property which was represented by the original shares of stock.

The judgment appealed from is annulled; and the testamentary executor is directed now to deliver to Miss Dorothy Spencer the three certificates representing the forty shares of the capital stock of the Times-Picayune Publishing Company. The costs of this proceeding are to be borne by the estate of the testatrix.

PONDER and HAMITER, JJ., dissent.

FOURNET, J., dissents and assigns reasons.

FOURNET, Justice (dissenting).

This is an appeal by Dorothy S. Spencer from a judgment of the lower court decreeing that she is not entitled under the will of the late Emma M. Quintero, born Peniston, bequesting her twenty shares of stock in The Times-Picayune Publishing Company, to the twenty additional shares of stock issued as a dividend to Mrs. Quintero by the company subsequent to the execution of the will but prior to her death.

Counsel for the appellant conceded in argument that under our law if The Times-Picayune Publishing Company had declared a cash instead of a stock dividend, such cash dividend would not have passed to the legatee at the death of the testatrix. He also conceded that if the dividend had been in cash and twenty additional shares of stock had been purchased with such cash, these shares of stock would not have passed to the legatee either. I cannot see the force or logic of the reasoning that

would make this rule of law inapplicable in the instant case merely because the company, instead of declaring a cash dividend, issued such dividend in the form of additional stock of the corporation unless there were an express provision in our law making such a distinction.

It is the universally recognized rule of law that "A specific legacy of shares of stock in a corporation does not carry with it dividends accruing prior to the testator's death, whether in cash, property, *or stock*, or not payable until after the testator's death, *unless a contrary intention is manifest in the will*, although the legatee is entitled to dividends declared after the testator's death." 69 C.J. 402, § 1452. See, also, 40 Cyc. 1549; Page on Wills, Lifetime Edition, § 1599c; vol. 11, Fletcher's Cyclopedia of Corporations 944, § 5383; vol. 7, Thompson on Corporations, 3rd Ed., 252, § 5372; Cook on Corporations, 8th Ed., § 301; Perry v. Maxwell, 17 N.C. 488, 2 Dev.Eq. 488; First National Bank v. Union Hospital, 281 Mass. 64, 183 N.E. 247, 89 A.L.R. 1130; Griffith v. Adams, 106 Conn. 19, 137 A. 20; McGregory v. Gaskill, Mo.App., 296 S.W. 833; In re Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A.1918B, 663; Hicks v. Kerr, 132 Md. 693, 104 A. 426, 10 A.L.R. 1326; Brundage v. Brundage, 60 N.Y. 544; In re Leavitt's Estate, 86 Misc. 609, 148 N.Y.S. 758; and Norris v. Harrison, 2 Madd.Ch. 268, 56 Eng.Reprint 333. This has been held to be true even though the stock dividend, declared during the testator's lifetime, is not paid until after his death, under the theory that a dividend belongs to the person owning

the stock at the time it is declared. vol. 2, Clark & Marshall on Private Corporations 1613; Cook on Corporations, 8th Ed., § 301; Sherman v. Riley, 43 R.I. 202, 110 A. 629; In re Kernochan, 104 N.Y. 618, 11 N.E. 149; De Gendre v. Kent, L.R. 4 Eq. 283; and Lock v. Venables, 28 Beav. 598, 54 Eng.Reprint 237.

And it is elementary that the construction and interpretation of a will for the purpose of ascertaining the testator's meaning and intention as expressed therein is governed by the law of the testator's domicile.

However, the majority opinion, declaring this court has had no occasion heretofore to pass on the issues raised in this case, resorts to certain pronouncements and holdings under the common law, as well as the processes of analytical reasoning evolved therein (none of which are applicable here from either a factual or legal standpoint), instead of to the civil law system chosen by the people of this state as the system under which they desired to be governed, in construing Mrs. Quintero's will and reversing the decision of the lower court by decreeing the legatee, Dorothy S. Spencer, to be the owner of the twenty additional shares of Times-Picayune Publishing Company stock issued as a dividend to Mrs. Quintero during her lifetime.

On Page No. 6 of the majority opinion [24 So.2d 592] we find the statement that "In other jurisdictions there are cases holding—under the facts peculiar to the case—that a testamentary bequest of a given number of shares of stock in a corporation did not of itself entitle the legatee to a stock dividend declared subsequent to the making of the will but before the death of the testator. *And there are decisions— where the facts were similar to the instant case—maintaining that such a testamentary bequest did entitle the legatee to the stock dividend.* A lineup of the decisions cited on each side of the question is published in 10 A.L.R. 1326, in the Annotation of Hicks v. Kerr, 132 Md. 693, 104 A. 426, and in 89 A.L.R. 1130, in the Annotation of First National Bank v. Union Hospital, 281 Mass. 64, 183 N.E. 247. * * *," and on page 17 of the majority opinion [24 So.2d 599] it is pointed out that the comment of the annotator following the case of First National Bank v. Union Hospital in 89 A.L.R. is to the effect that "It may be noted that this rule may tend to defeat the intent of the testator. The value of the stock bequeathed may be greatly enhanced by undivided profits which testator understood to be a part of his gift of the stock itself, and if the profits are divided in the form of a stock dividend, the original value of the stock bequeathed is thereby greatly diminished, without bringing in any cash. The testator may regard it as in fact unchanged so far as his bequest is concerned, and intend the increase to pass with the stock originally bequeathed." (Italics mine.)

But it is not disclosed in the majority opinion, nor was this court informed, that in the annotation in 10 A.L.R. 1326, following the reported case of Hicks v. Kerr, under the heading "Do dividends of stock declared before testator's death pass to legatee of original stock?" is the comment that

"The cases which have actually passed upon this·question are few in number, and are in accord with the reported case (Hicks v. Kerr, [132 Md. 693, 104 A. 426, 10 A.L.R.] 1323), whether the dividend was in stock of the corporation which issued that covered by the will, or was a division among stockholders of the stock of other corporations held by the parent corporation. * * * However, *the cases so far as they have actually passed upon the question, have held that the specific bequest did not carry the stock dividend in either case.*" Nor is it disclosed in the majority opinion that in the supplemental annotation on this subject to be found in 89 A.L.R. 1130, and just preceding the quotation cited from Page No. 17 of the majority opinion [24 So.2d 599], it is stated: "The *majority* of the cases herein collated *agree with the few cases cited in the former annotation in holding that a specific bequest of shares of stock does not carry with it a stock dividend declared during the lifetime of the testator,* whether the dividend was in stock of the corporation which issued that covered by the will, or was a division among stockholders of the stock of other corporations held by the parent corporation." (Italics mine.)

Further, there is nothing in the majority opinion pointing to the fact that the cases following the so-called minority rule (which are the cases relied on to support the majority holding) are, as the annotator in 89 A.L.R. 1130 points out, all cases "in which an increase in the number of shares bequeathed has been effected by a change in the organization of the corporation or by a splitting of the original shares with a proportional reduction in par value after the making of the will and during the testator's lifetime," in which cases "a different rule seems to prevail. In such cases the courts hold that the increased number of shares, in proportion to the number of shares bequeathed, pass to the specific legatee." The annotator then gives specific examples of such instances: "Thus, in Fidelity Title & T. Co. v. Young, 1924, 101 Conn. 359, 125 A. 871 (because of a provision in the will that the stock's 'equivalent in cash at the time of my decease should I not then be the owner of said stock,' be given to the legatee), where stock of a par value of $100 was split five for one, and the par value was changed to $20, a specific legatee of 125 shares of stock was held entitled to 625 shares after the split. The court states that a specific legacy of shares of stock owned by the testator at the date of the will necessarily refers to shares then existing. So, in Heckler v. Young, 1931, 264 Ill.App. 34, a bequest of thirty shares of stock was held to carry ninety shares to the legatee where the shares were split three for one, with the consequent reduction in their value to about one third. Here the testatrix knew at the time the will was drawn and executed that the stock was going to be split; and the will provided that, in the event she did not own the stock at the time of her death, the legatee should receive cash equivalent to the market value of the stock as of the date of the will. And see to the same effect Bireley's Adm'rs v. United Lutheran Church, 1931, 239 Ky. 82, 39 S.W.2d 203, where the stock was split four for one,

with consequent reduction in par value; In re Mandelle's Estate, 1930, 252 Mich. 375, 233 N.W. 230, where the stock was split five for one and shares of no par value substituted; and In re Martin's Will, 1929, 252 N.Y. 582, 170 N.E. 151 (reversing, 1928, 225 App.Div. 724, 231 N.Y.S. 813), where stock was split four for one with a consequent reduction in par value, in all of which the same rule is applied." (The provision in the will in the Fidelity Title case was inserted in this quotation by me.)

Thus it may be seen that in all of these cases stock split-ups or corporate reorganizations were involved with the result that the shares bequeathed were, in effect, "watered". In none of these cases had stock *dividends* been declared. Further, it is obvious from a reading of the cases in this so-called minority group that the court rested its decision in each case on the intention of the testator as ascertained from the terms of the will itself and the circumstances surrounding the execution of the same. It therefore follows that whatever consolation the majority opinion may derive from the reasoning processes employed by the courts in reaching the decisions relied on, it can have no application to the facts of the case now under consideration.

A mere reading of the entire testament in this case will disclose that the testatrix obviously had the advice and assistance of counsel in its preparation and, in my opinion, the language used therein demonstrates that the testatrix not only understood the import and significance of the

terms used by her in disposing of her property, but that she did this in the light of our codal articles, for, in her will, she declares: "I hereby make and establish the following *particular* legacies of the following particular objects and request that my executor deliver said legacies to the named legatees as soon as may be" (necessarily meaning that the legacy should be delivered by the executor after her death), and then stipulates in the second paragraph "To Dorothy Spencer I give and bequeath 150 shares of stock of the United Fruit Company, 20 shares of stock of The Times-Picayune Publishing Company, 20 shares of stock of the Banco Atlantida, and all the stock of the American Telephone & Telegraph Company owned by me at the time of my death. * * *" (Italics mine.)

Under the express provisions of our Revised Civil Code "Testamentary dispositions are either universal, under a universal title, or under a particular title. * * *" (Article 1605), and "Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed * * *." Article 1626.

Counsel for the appellant argues that these articles must be read in connection with Article 1636 which provides that "The legacy bequeathed shall be delivered with everything that appertains to it, in the condition in which it was on the day of the donor's decease."

This is true, but it is also true that these three articles must be read in connection with Article 1631, to be found under the

heading "Of Particular Legacies" in Paragraph 4 of Section 4 of Chapter 6 of Title II of the Revised Civil Code (dealing with donations inter vivos and mortis causa) wherein it is provided that "The interest or proceeds of the thing bequeathed shall accrue to the benefit of the legatee, *from the day of the decease,* without his having brought suit for the same: 1. When the testator has expressly declared in his will to that effect; 2. When an annuity or pension has been bequeathed by way of maintenance."

Thus it may be seen that while the legacy takes effect from the date of the testator's death, the fruits of a particular legacy accrue to the benefit of the legatees only from the day the thing bequeathed is delivered or from the day judicial action is begun by the legatee except in the two cases referred to in Article 1631, i. e., when the testator has *expressly* declared to that effect in his will or an annuity or pension has been bequeathed by way of maintenance.

If there is any doubt, however, as to the meaning of the provisions to be found in Article 1636 when it is read in connection with the provisions of Article 1631, resort must be made to the construction given Article 1018 of the Code Napoleon, from which Article 1636 was derived, since its provisions are a literal translation of that article. McCaffrey v. Benson, 40 La.Ann. 10, 3 So. 393; Succession of Marinoni, 183 La. 776, 164 So. 797; and Successions of Lissa, 198 La. 129, 3 So.2d 534.

Resort to the French jurisprudence under Article 1018 of the Code Napoleon and the comments thereon by the French authorities leaves no doubt that there was no conflict between the provisions of these two articles. The authorities are unanimous in holding that what is meant by "everything that appertains" to a particular legacy are those things that are indispensable to its use for the purpose for which it was destined. In other words, those accessories without which a thing bequeathed would be rendered useless, as the key to a closet, the sheath of a sword, the pedestal of an ornamental clock, the frame of a painting, or those things which have been attached to and made a part of the object bequeathed by law, such as immovables by destination. Vol. 3, La.Legal Archives, 901; Toullier, Droit civil francais, vol. 5, No. 531; Baudry-Lacantinerie, Traite de Droit Civil, vol. XI, No. 2542; L. Josserand, Cours de Droit Civil, vol. 3, No. 1508; Aubry & Rau, Droit Civil Francais, vol. XI, p. 484; Pothier, Des donations testamentaries, Chap. V, Sec. III, Art. I, Section 8; and Pothier, Traite de Donations Testamentaries, Chap. V, Section III.

It certainly cannot be said that the fruits of a legacy form such an indispensable or integral part thereof and are so necessary for its proper enjoyment that they necessarily appertain thereto.

In the instant case the testatrix willed 20 shares of Times-Picayune Publishing Company stock, each share having a par value of $100, to Dorothy Spencer. If the judgment of the lower court is affirmed Dorothy Spencer will receive this identical number of shares and they will have the same par value—$100. It cannot be said

that the 20 additional shares of stock, also with a par value of $100, are in any way indispensable to the proper enjoyment or use of the original 20 shares. These 20 additional shares should not, therefore, pass to Miss Spencer in the absence of an express declaration to that effect by the testatrix.

No such intention can be found either in the express terms of the will or implied from any terms found therein, and the deceased having failed to change her will or add thereto by codicil after these additional stock shares were issued to her by stipulating that she intended them included in the bequest to Dorothy Spencer, we are powerless to give them to her for under the heading "General Rules for the Interpretation of Legacies," in Section 7 of Chapter 6 (dealing with dispositions mortis causa) of Title II of the Revised Civil Code, it is declared that "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Article 1712. (This is in conformity with the universal rule hereinabove referred to.)

And if, by some process of conjectural reasoning it can be said that because this stock dividend was carved out of the surplus and undivided profits that had accumulated under the 20 shares of stock bequeathed to Dorothy Spencer some doubt might exist as to whether or not the testatrix also intended to bequeath these fruits or dividends to the legatee, then the provisions of Article 1717 (found in this same

Section 7 of Chapter 6 under the heading "General Rules for the Interpretation of Legacies") to the effect that "If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least," are applicable.

The court can only give effect to the expressed, not the conjectural or problematical, intention of the testator. Spath v. Zeigler, 48 La.Ann. 1168, 20 So. 663; Succession of Langles, 105 La. 39, 29 So. 739; Succession of Villa, 132 La. 714, 61 So. 765. And it cannot presume that the testator's intention has changed from that expressed in the will. Succession of Cunningham, 142 La. 701, 77 So. 506. Forced constructions that place in the mouth of the testator that which he refrained from saying are not permissible (Theall v. Theall, 7 La. 226, 26 Am.Dec. 501; City of New Orleans v. Hardie, 43 La.Ann. 251, 9 So. 12; Maguire v. Maguire, 110 La. 279, 34 So. 443) for the court has only one province, to construe wills. It cannot make them.

For these reasons I respectfully dissent from the majority holding.

### On Rehearing.

HAWTHORNE, Justice.

In application for a rehearing, it is contended that this court erred in its original opinion and decree in holding (1) "that a testamentary bequest of a given number of shares of stock in a corporation entitles the legatee to a stock dividend declared by the corporation subsequent to the making of the will, but before the death of the

testatrix", and (2) "that the testatrix intended to bequeath and did bequeath to appellant [Miss Spencer] the stock dividend".

In brief filed here, it is contended that this court in its majority opinion obscured, the legal principle involved in stressing the value of the legacy, and that the beneficiary of a particular legacy of an incorporeal thing, such as a franc, a louis, a dollar, or a certificate of stock, is entitled only to the particular number of units specified in the bequest. In support of this contention, counsel say that, according to Pothier, Traité des Donations testamentaires, Chapter V, Section III, Article I, Subsection V, " * * * the legatee must have the benefit of any increase, or suffer any diminution which may happen to the thing bequeathed * * *." (As translated in appellees' brief.)

Counsel are in error in their assumption that this court stressed the value of the legacy in awarding the 40 shares to Miss Spencer. What this court said was that the subsequent conversion of the legacy into 40 shares of the increased capital stock of The Times-Picayune Publishing Company did not change the *substance* or *value* or *identity* of the incorporeal property which was bequeathed to Miss Spencer. In other words, we found that the stock certificates for 40 shares which Mrs. Quintero held at the time of her death constituted merely the evidence of the same incorporeal right which she had bequeathed to Miss Spencer and which was evidenced by 20 shares at the time the will was written. To state this succinctly, there was no increase or diminution in the thing bequeathed, as under our holding it remained the same in substance, value, and identity, and therefore the rule quoted from Pothier has no application.

The clause quoted above from Pothier is found under the topic: "In what condition must the thing bequeathed be delivered?" Immediately thereafter we find the statement: "The thing bequeathed, *when it is a specific thing,* must be delivered in the condition it was at the time of the delivery." (Italics ours.)

The specific thing bequeathed in this case was the interest of Mrs. Quintero in the capital stock of The Times-Picayune Publishing Company, which interest, as we have pointed out, was the same on the day of her death as at the time she made the will.

Counsel for appellees call our attention to Article 1722 of the Revised Civil Code, which provides that:

"A disposition, the terms of which express no time, neither past nor future, refers to the time of making the will.

"Thus, when the testator expresses simply that he bequeaths his plate to such a one, the plate that he possessed at the date of the will, is only included."

Counsel contend that, according to this article, Mrs. Quintero referred to only the 20 shares of stock which she owned at the time of making the will, and that consequently that limitation on the description of the stock is sufficient to exclude the stock

dividend, and they argue that, this being true, the decision in Hicks v. Kerr, 132 Md. 693, 104 A. 426, 10 A.L.R. 1323, is applicable to this case.

We concede that this article would be applicable and would be sufficient to exclude the stock dividend under a holding that what Mrs. Quintero actually willed to Miss Spencer was the mere paper certificates for 20 shares of the capital stock of the corporation. But, as shown in the majority opinion, what the testatrix intended to bequeath was not the mere paper certificates for 20 shares of the capital stock but was the interest in the capital stock of the corporation which these shares represented, in this case evidenced on the date of the testatrix' death by certificates for 40 shares.

After a careful reconsideration of our original opinon, we are convinced that our decree rendered therein, ordering the testamentary executor to deliver to Miss Dorothy Spencer the three certificates representing the 40 shares of the capital stock of The Times-Picayune Publishing Company, is correct, and it is therefore ordered that our original decree be reinstated and made the final judgment of this court.

FOURNET, PONDER, and HAMITER, JJ., dissent.

FOURNET, Justice (dissenting).

As pointed out in my dissenting opinion when this case was originally before us, "A specific legacy of shares of stock in a corporation does not carry with it dividends accruing prior to the testator's death, whether in cash, property, or *stock* * * *." 69 C.J. 402, § 1452. This rule of law is universally recognized and followed in all of the courts in the land, including the State of Louisiana, and it is only when a contrary intention is manifested in the will itself that it has no application.

It is conceded in the majority opinion that this rule of law universally obtains and that it would be applicable in this case except for the fact that "what the testatrix intended to bequeath was not the mere paper certificates for 20 shares of the capital stock but was the interest in the capital stock of the corporation which these shares represented" or, as otherwise stated in the majority opinion, "The specific thing bequeathed in this case was the interest of Mrs. Quintero in the capital stock of The Times-Picayune Publishing Company * * *."

According to the express words used by Mrs. Quintero in her will, she thereby made and established *"the following particular legacies of the following particular objects* and request that my executor deliver said legacies to the named legatees as soon as may be * * *" and then stipulates in the second paragraph *"TO Dorothy Spencer I give and bequeath * * * 20 shares of stock of The Times-Picayune Publishing Company * * *."* These are the only words in the entire will with reference to the bequest in controversy and in my humble opinion the conclusion

reached in the majority opinion that it was her interest in the capital stock of The Times-Picayune Publishing Company that the testatrix thereby intended to bequeath cannot possibly be eked out from them.

The holding in the majority opinion is in direct violation of those rules laid down in the Revised Civil Code and the jurisprudence thereunder for the court's guidance in interpreting wills, for while it is our duty to give effect to the expressed intention of the testator we are without right to presume or to resort to conjectural or problematical reasoning in order to arrive at a conclusion as to the intention of the testatrix. In other words, the province of the court is to construe wills, not to make them.

Moreover, the conclusion reached in the majority opinion does violence to those express pronouncements in the code declaring that "Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed * * *" (Article 1626), and this "shall be delivered with everything that appertains to it, in the condition in which it was on the day of the donor's decease." Article 1636. Everything that appertains to a particular legacy according to the authorities are those things that are indispensable to its use for the purpose for which it was destined, and "If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least." Article 1717.

For these reasons I respectfully dissent from the majority opinion on rehearing.